**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**ESTIMÉ FRANÇOIS and**
**RENETTE ORDEUS,**
**on behalf of themselves and**
**all others similarly situated,**

**Plaintiffs,** **CASE NO.: 8:16-CV-1061-T-24TBM**

**v.**

**GULF COAST**
**TRANSPORTATION, INC.,**

**Defendant.**
**____________________________________/**

**FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs ESTIMÉ FRANÇOIS and RENETTE ORDEUS ("Named Plaintiffs"), by and through undersigned counsel and on behalf of themselves and all others similarly situated, hereby bring this action against Defendant, GULF COAST TRANSPORTATION, INC. ("Defendant"), and in support of state as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. for failure to pay a federal minimum wage, as well as for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., and for conversion under Florida common law.

2. This hybrid Complaint is filed both as a collective action under 29 U.S.C. § 216(b) and as a class action under Federal Rule of Civil Procedure 23. The instant action is brought by and on behalf of persons who are or have been employed as taxicab drivers during

the relevant statutory period by Defendant, a Florida corporation that is headquartered in Tampa, in Hillsborough County.

3. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

4. Exercise of supplemental jurisdiction over Plaintiffs' state law claims is appropriate under 28 U.S.C. § 1367(c).

5. Venue is proper in the Middle District of Florida, because all of the events giving rise to these claims occurred in Hillsborough County, Florida.

**PARTIES**

6. Named Plaintiffs ESTIMÉ FRANÇOIS and RENETTE ORDEUS are residents of Hillsborough County, Florida.

7. Defendant GULF COAST TRANSPORTATION, INC. ("Gulf Coast") is a Florida corporation headquartered in Tampa, Florida. Gulf Coast is in the business of providing taxicab services to the general public in and around Hillsborough County, Florida.

**GENERAL ALLEGATIONS**

8. Plaintiffs have satisfied all conditions precedent, or they have been waived.

9. Plaintiffs hired the undersigned attorneys and agreed to pay them a fee.

10. Plaintiffs request a jury trial for all issues so triable.

11. At all times material hereto, Named Plaintiffs were employed by Defendants as taxicab drivers.

12. The putative FLSA collective action on whose behalf Plaintiffs are bringing this class action is composed of all of the taxicab drivers who were employed by Defendant during any period of time within the past three years.

13. This collective action and class action challenges Gulf Coast's uniform policy of willfully misclassifying its taxicab drivers as independent contractors, when these taxicab drivers are current or former employees of Gulf Coast.

14. As a result of its unlawful misclassification of its taxicab drivers as independent contractors, Gulf Coast has uniformly violated the minimum wage provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., as well as the plain proscriptions of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., through the following willful actions and omissions:

(a) Failing to pay its taxicab drivers at least the minimum wage required by Federal law as compensation for every hour that they worked;

(b) Misclassifying its taxicab drivers as independent contractors rather than employees, which caused them harm by creating negative tax implications, depriving them of their right to seek benefits under the Florida Worker's Compensation program and the Florida Reemployment Assistance program, and effectively reducing their long-term contributions to the federal Medicare and Social Security programs, when they were entitled to all of these benefits as a matter of law by virtue of their status as employees;

(c) Engaging in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce, thereby violating FDUPTA.

15. During the statutory period, Named Plaintiffs and all similarly situated employees handled goods or materials that had been moved in or produced for commerce, and as such, they were subject to individual coverage under the FLSA.

16. At all times material hereto, Named Plaintiffs and all similarly situated persons were "employees" of Defendant Gulf Coast within the meaning of the FLSA.

17. At all times material hereto, Defendant Gulf Coast was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

18. Defendant Gulf Coast continues to be an "employer" within the meaning of the FLSA.

19. Named Plaintiffs and the FDUPTA putative class members are "consumers" and protected by FDUTPA.

20. During the relevant statutory period, Defendant employed at least two taxicab drivers who handled goods or materials that had been moved in or produced for commerce. These taxicab drivers were and are engaged in interstate commerce or in the production of goods for commerce within the meaning of the FLSA.

21. At all relevant times, Defendant Gulf Coast was engaged in related activities performed through a unified operation or common control for a common business purpose, and as such was an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

22. At all times relevant to this action, Defendant Gulf Coast engaged in interstate commerce within the meaning of the FLSA through the following activities:

a) Gulf Coast bought, maintained, and serviced all of the taxicabs that it provided to its drivers, using parts and supplies that had moved in interstate commerce;

b) Gulf Coast equipped all of its taxicabs with fare meters, Global Positioning Systems ("GPS"), two-way radios for dispatch communications, laptops, and VeriFone point-of-sale payment verification software, all of which had been created or manufactured at least in part in other states or abroad, and had moved in interstate commerce;

c) Gulf Coast required its drivers to fuel the taxicabs that they had been assigned, thereby participating in interstate commerce through the purchase of gasoline that had already moved in interstate commerce and was necessary to the continuation of its business operations.

23. At all times relevant to this action, the annual gross sales volume of Defendant Gulf Coast exceeded $500,000 per year.

24. At all times relevant to this action, Defendant Gulf Coast was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. 203(s)(1)(A).

25. At all times material hereto, Named Plaintiffs and all similarly situated employees, while employed by Defendant as taxicab drivers, had no time whatsoever to pursue other business opportunities.

26. At all times material hereto, Defendant set its taxicab drivers' work schedules, provided them with taxicabs and all of the equipment that they needed to perform their work as taxicab drivers, and ensured access to Defendant's dispatch system, through which they received the great majority of their passenger calls.

27. At all times material hereto, Named Plaintiffs and all similarly situated employees of Defendant could not contact potential passengers directly. Instead, the great majority of their

passenger calls were routed through Defendant's dispatch service. While the taxicab drivers who worked for Gulf Coast could offer rides to potential passengers who hailed their taxicabs, they had no opportunity to compile customer lists, grow a dependable clientele base, and otherwise develop a taxicab business on their own.

28. Defendant also exercised complete control over the methods that Named Plaintiffs and other taxicab drivers used to conduct their work, the manner in which this work was completed, and the circumstances surrounding their work activities. For example, Defendant implemented a grooming policy for its taxicab drivers, adopted a strict passenger credit card acceptance policy that they had to follow, and enforced a no ride refusal policy under which its taxicab drivers were prohibited from safely dropping off disruptive or violent persons before completion of their transit once they had been accepted as passengers.

29. At all times material hereto, the work performed by Named Plaintiffs and similarly situated employees was integral and essential to the business performed by Defendant.

30. Defendant holds itself out to the public as a taxicab company, and would not be able to deliver the services that it advertises without hiring, training, and employing taxicab drivers.

31. As a matter of economic reality, Defendant's taxicab drivers were economically dependent on Defendant.

32. Thus, rather than being independent contractors in business for themselves, Named Plaintiffs and all similarly situated taxicab drivers were "employees" of Defendant within the meaning of the FLSA.

33. As an employer, Defendant had a legal obligation under the Internal Revenue Code as well as Florida law to deduct all applicable employment taxes from its taxicab drivers' earnings.

34. At all times material hereto, Named Plaintiffs and all similarly situated employees were "persons" within the meaning of FDUTPA, Fla. Stat. §511.211(2).

35. At all times material hereto, Defendant was engaged in trade or commerce, and as such, was governed by FDUTPA.

## SUPPORTING FACTS

### *The Named Plaintiffs*

36. Plaintiff ESTIMÉ FRANÇOIS began working for Defendant as a taxicab driver in 2009, and he worked in this capacity until on or around January 14, 2016.

37. Likewise, Plaintiff RENETTE ORDEUS began working for Defendant as a taxicab driver August of 2015, and she worked in this capacity until on or February of 2016.

38. Plaintiff François routinely worked for Defendant Gulf Coast for 18 to 20 hours per day, at least six days per week.

39. Plaintiff Ordeus also worked for 18 to 20 hours per day, and averaged up to 60 hours per week.

40. During his employment with Gulf Coast, Plaintiff François received no wages whatsoever from Gulf Coast in exchange for his work. Neither did Plaintiff Ordeus.

### *Defendant's Business Operation*

41. Defendant Gulf Coast is in the business of providing taxicab services within and from Hillsborough County, Florida.

42. Defendant operates its taxicab service for twenty-four hours per day, seven days per week.

43. Defendant's dispatch service is also kept in operation for twenty-four hours per day, seven days per week.

44. Gulf Coast has conducted and continues to conduct business under various names, including but not limited to: United Cab, United Cab Company, United Taxi, Tampa Bay Cab, Tampa Bay Cab Company, Thrifty Cab Company, and Wheelchair Cab.

45. The taxicab drivers who work for Gulf Coast pick up passengers from cabstands and other locations within Hillsborough County, including the Tampa International Airport.

46. Gulf Coast owns, maintains, and repairs all of the taxicabs driven by Plaintiff and similarly situated employees.

47. Gulf Coast owns and operates a garage to service the taxicabs that it assigns to its drivers.

48. Gulf Coast provides roadside assistance and a wrecker service to drivers whose taxicabs experience mechanical problems.

49. Gulf Coast provides all of the supplies that are necessary to perform routine maintenance work on its taxicabs, including but not limited to engine oil, antifreeze, tires, filters, and standard automotive parts. All of these items have moved through the stream of commerce before being purchased and used by Defendant.

50. At its sole discretion, Gulf Coast determines the maintenance services that are to be rendered to each taxicab. Other than fueling the taxicabs, drivers who work for Defendant perform no routine maintenance or other mechanical work on the taxicabs.

51. In order to operate its taxicabs in and around Hillsborough County, Gulf Coast leases certificates of public convenience and necessity for its taxicabs from the Hillsborough County Public Transportation Commission.

52. Gulf Coast pays for all licenses, taxes, and fees that are necessary to the operation of its taxicab fleet in Hillsborough County.

53. Gulf Coast trains all of its new taxicab drivers at its own expense.

54. Gulf Coast equips all of its taxicabs with fare meters that it programs, services, and maintains. Gulf Coast sets the fare rates for each meter.

55. During the relevant statutory period, Gulf Coast required Named Plaintiffs and all similarly situated employees to use these installed fare meters in order to record the distance travelled during each passenger trip and determine the resulting fare to be assessed to the passenger. The drivers had no discretion in assessing the amount of each passenger fare. Instead, the amount of each fare was dependent upon the fare meter programmed by Defendant.

56. Gulf Coast equipped all of its taxicabs with Global Positioning System ("GPS") devices, which enabled Gulf Coast to ascertain the location of each taxicab at any given time with a great degree of precision.

57. In 2012, Gulf Coast equipped all of its taxicabs with laptops operating a VeriFone Taxi Point-Of-Sale ("POS") processing system, in order to ensure that passengers would be able to use credit cards to pay their fares once they arrived at their desired destinations.

58. Gulf Coast requires its taxicab drivers to accept credit cards from passengers for payment of fares. Taxicab drivers have no discretion whatsoever in determining whether they will accept credit cards from passengers as a method of payment for taxicab fares.

59. Defendant processes and collects passenger credit card payments of fares directly through the VeriFone system, and later credits these payments to the corresponding taxicab driver's account with Defendant.

60. When credit card payments for passenger fares are rejected, as determined by Defendant during processing, the corresponding taxicab driver is charged for the amounts of the rejected fares, even if these rejections are the result of Defendant's delay in presenting credit card receipts for payment. These amounts appear as debits on the corresponding taxicab driver's account with Defendant.

61. Defendant has a contractual agreement with the Tampa International Airport.

62. Specifically, Defendant pays a fee to the Tampa International Airport for allowing its taxicab drivers to pick up passengers there.

63. Defendant requires its taxicab drivers to wait for fares at the Tampa International Airport in accordance with a ranking system, through which Defendant's dispatch service ascertains the place of each taxicab in the waiting line and assigns passenger calls accordingly.

64. Named Plaintiffs and all other similarly situated employees often waited in the taxicab line at the Tampa International Airport for hours, without being assigned a single passenger by Defendant's dispatch service or collecting a single fare.

65. By requiring its taxicab drivers to wait for fares at the Tampa International Airport, Defendant engaged them to wait. Thus, the time during which Defendant required its taxicab drivers to wait was compensable time under the FLSA.

66. When Named Plaintiffs and all similarly situated employees began employment with Defendant, they were required to obtain a public vehicle driver's license, which is referred to as a "hack" license in the taxicab industry.

67. To obtain "hack" licenses from Hillsborough County, Named Plaintiffs and all similarly situated employees of Defendant had to pay an initial fee of one hundred Dollars ($100), and in addition, had to submit to a physical examination and a background check for

another twenty-five Dollars ($25). “Hack” licenses are renewable annually for a seventy-five Dollar ($75) fee.

68. Under the taxicab permit system administered by the Hillsborough County Public Transportation Commission (“the Commission”), it is nearly impossible for an individual taxicab driver to obtain a taxicab permit that is valid in Hillsborough County.

69. Though the Commission revised its rules pertaining to the issuance of taxicab permits to eligible drivers in 2012, the stringent requirements and costs associated with this process, along with the extremely limited number of available taxi permits in Hillsborough County, effectively preclude participation in the Commission’s Driver Ownership Program as a viable, feasible, and realistic option for Named Plaintiffs and all similarly situated employees of Defendant who might have at one time entertained the goal of operating their own taxicabs as drivers independent from Defendant.

70. At various times during the past fifteen years, Defendant has publically advocated for stringent limits on the issuance of taxi permits by the Hillsborough County Public Transportation Commission.

71. During the past fifteen years, the Hillsborough County Public Transportation Commission has issued few new taxi permits.

72. Currently, the only realistic option that is available to a person who wishes to work as a taxicab driver in Hillsborough County is to enter into a “lease” agreement with Defendant Gulf Coast, or with one of the few other taxicab companies that competes with Gulf Coast.

73. Under Defendant's "lease agreement" scheme, all new taxicab drivers must pay a refundable bond to Gulf Coast. During the relevant statutory period, the amount of this refundable bond was typically between one thousand and two thousand Dollars ($1,000-$2,000).

74. Under Defendant's "lease agreement" scheme, each driver who leases a taxicab from Gulf Coast must pay a daily "lease" fee to Gulf Coast of $98, corresponding to a twenty-four hour period, or a weekly "lease" payment of $650 per week. See Exhibit A, Schedule A.

75. Under Defendant's "lease agreement," each driver who leases a taxicab from Gulf Coast can also "split" one of more days with another driver, so that each driver works a twelve-hour shift during that day. If taxicab drivers elect to split a shift, Gulf Coast assesses a daily lease fee of $86 to each driver for the split shift, corresponding to a period of twelve hours. See Exhibit A, Schedule A.

76. Consequently, taxicab drivers who opt for a full twenty-four hour regular shift pay exactly twelve Dollars more in lease fees to Defendant than taxicab drivers who opt for a twelve-hour split shift instead.

77. By setting a disproportionally high lease fee for driver split shifts, Defendant actively and deliberately discourages its taxicab drivers from opting for split shifts.

78. Under Defendant's "lease agreement," taxicab drivers only retain the cash fares that they receive from customers, along with tips.

79. Under Defendant's "lease agreement," taxicab drivers are responsible for the cost of fueling the taxicabs.

80. Under Defendant's "lease agreement," taxicab drivers must pay their "lease" payment to Gulf Coast at the end of every week.

81. Under Defendant's "lease agreement," credit card payments of fares are processed by Defendant. They are then credited against the corresponding driver's weekly "lease" payment.

82. During the relevant statutory period, Defendant did not record or keep track of the actual income earned by its taxicab drivers.

83. During the relevant statutory period, Defendant did not include driver income from passenger fares in its gross receipts.

84. During the relevant statutory period, Named Plaintiffs and all other similarly situated employees had to work for more than forty hours each week in order to meet and fulfill their weekly "lease" payment obligations.

85. During the relevant statutory period, Named Plaintiffs and other similarly situated employees of Defendant only earned actual income once they made their weekly "lease" payments.

86. To meet the weekly costs of their "lease agreements" with Gulf Coast, taxicab drivers typically work at least eighty hours every week.

87. The purpose and effect of Defendant's "lease agreement" scheme is to deny its taxicab drivers the minimum wage that they are entitled to earn under the FLSA.

88. During the statutory period, Named Plaintiffs and other similarly situated employees of Defendant regularly worked at least eighty hours each week, driving passengers within Hillsborough County, actively waiting at cabstands for passengers, or actively driving throughout Hillsborough County in order to locate potential passengers.

89. At all times material hereto, Named Plaintiffs and similarly situated employees worked hours at the direction of Defendant, and they were not paid on the basis of a rate that was at least equal to the applicable minimum wage for all of the hours that they worked.

90. During the relevant statutory period, Defendant failed to pay a minimum wage to its taxicab drivers for all of the hours that they worked during this period.

91. At all times material hereto, Named Plaintiffs and all similarly situated employees of Defendant were non-exempt employees of Defendant within the meaning of the FLSA, and as such, were entitled to be compensated in accordance with the FLSA's minimum wage provisions.

92. During the relevant statutory period, Defendant failed to accurately make, keep, and preserve the actual hours worked by its taxicab drivers, in violation of the FLSA. See 29 U.S.C. § 211(c).

93. By setting the fare meter rate in each taxicab in order to limit the maximum fares that its drivers may charge passengers, Gulf Coast maintained exclusive control over its taxicab drivers' primary means of deriving income from their employment with Gulf Coast.

94. By charging its taxicab drivers a high "lease" payment each week, Gulf Coast maintained exclusive control over its taxicab drivers' primary expense.

95. The relationship between Gulf Coast and its taxicab drivers is long-term, with taxicab drivers signing 12-month lease agreements that are renewed every year.

96. Gulf Coast requires its taxicab drivers to keep their vehicles clean, and it sets minimum personal grooming standards for its drivers.

97. Gulf Coast purchases basic insurance coverage for its taxicabs.

98. Gulf Coast enforces a no ride refusal policy, dictating that once a driver accepts to offer a ride to a passenger, that passenger must be allowed to stay in the taxicab until the designated destination is reached.

99. While taxicab drivers may refuse to offer a ride to disorderly or drunk passengers, they are prohibited from safely dropping off a disruptive or violent passenger to whom they have already offered a ride.

100. As a result of this particular policy, the personal safety of Named Plaintiffs and similarly situated employees was often placed in jeopardy by passengers who engaged in violent or disruptive behavior, including but not limited to slapping them, spitting on them, and calling them names.

101. For example, when Plaintiff François complained about the abuse that he had suffered on account of Gulf Coast's no ride refusal policy, he was just told to accept it, because this was "the nature of the business."

102. Gulf Coast prohibits its taxicab drivers from hiring an assistant to drive for them when they are sick, injured, or otherwise unable to drive.

103. Taxicab drivers who work for Gulf Coast are required to make full weekly "lease" payments to Gulf Coast, regardless of whether they are unable or unavailable to drive at any time during the corresponding week.

104. If a taxicab driver takes more than two weeks' vacation without making his or her weekly "lease" payment, Gulf Coast's policy is to cancel the driver's "lease agreement."

105. If the driver then seeks to be reinstated, Gulf Coast will require that driver to sign a new "lease agreement," usually incorporating a higher weekly "lease" payment.

106. Gulf Coast reserves the right to uniformly increase the amount of the weekly "lease" payments to be made by its drivers, without notice and at any time.

107. Under Gulf Coast's "lease agreement" scheme, only Gulf Coast could work to expand its clientele base, contract with local hotels and other businesses to provide taxicab service, and build goodwill.

108. All taxicabs owned by Gulf Coast bear insignia that belong to Gulf Coast.

109. Only Gulf Coast may place advertisements on its taxicabs, and only Gulf Coast derives a profit from the advertising materials placed on or inside the taxicabs.

110. Taxicab drivers who work for Gulf Coast do not have the right to refuse placing Gulf Coast's advertisements on the taxicabs that are assigned to them.

111. Gulf Coast categorically prohibits its taxicab drivers from placing their own advertisements on or inside the taxicabs that are assigned to them.

112. Gulf Coast does not permit its drivers to refuse service to passengers who have been offered discounted fares by Defendant, though the effect of this practice is to reduce the drivers' actual income.

113. Gulf Coast controls its drivers through the use of reprimands, fines, suspension, and termination from employment.

114. In an effort to avoid providing its taxicab drivers with the minimum benefits and protections afforded employees under the FLSA and Florida law, Gulf Coast has willfully, uniformly, and unilaterally classified each and every one of its drivers as independent contractors, rather than employees, despite the fact that the factual circumstances of the relationship between Gulf Coast and its drivers clearly demonstrate that Gulf Coast taxicab drivers are, in fact, employees of the company.

115. By misclassifying Plaintiff François and all similarly situated employees of Defendant as independent contractors, Defendant avoided withholding employment taxes from

their earnings. Defendant also avoided paying mandatory employment taxes on their behalf, as it was legally required to do for all of its employees under the provisions of the Internal Revenue Code. See 26 U.S.C. §§ 3102(a), 3402(a) (imposing a duty on employers to deduct applicable taxes from their employees' wages); 26 U.S.C. § 3401(d)(1) (defining "employer" under the IRC); (26 U.S.C. § 3121(a) (defining employee wages for the purpose of income taxation).

116. Defendant's purpose in misclassifying Named Plaintiffs and all similarly situated employees of Defendant as independent contractors, rather than properly classifying them as employees, was to save money and simultaneously acquire a competitive advantage in the marketplace. Specifically, by avoiding payment of all applicable employment taxes that it had a legal duty to pay on behalf of its taxicab drivers by virtue of their status as employees, Defendant saved the money that it would otherwise have spent in meeting its tax obligations in connection with their employment. Moreover, this intentional misclassification of employees as independent contractors helped Defendant acquire a competitive advantage in the marketplace.

117. In purposely avoiding payment of the mandatory employment taxes that it was legally obligated to pay on behalf of its taxicab drivers in order to save money for its business, Defendant simultaneously ensured that its labor costs remained consistently lower than those of other employers in Hillsborough County, all the while depriving Named Plaintiffs and all similarly situated employees of Defendant of benefits to which, as employees, they were entitled by law.

118. Thus, by intentionally misclassifying Named Plaintiffs and all similarly situated Gulf Coast taxicab drivers, Defendant engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce, thereby violating the FDUTPA.

119. Defendant's actions were willful, and showed reckless disregard for the provisions of the FLSA and the FDUTPA.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

120. Named Plaintiffs brings this action under 29 U.S.C. § 216(b) as an "opt-in" collective action on behalf of similarly situated employees of Defendant. These similarly situated employees are taxicab drivers who worked for Defendant during any period of time within the past three years, and to whom Defendant failed to pay a minimum wage for all of the hours that they worked.

121. Therefore, notice is properly sent to: "**All taxicab drivers to whom Defendant failed to pay a minimum wage for all of the hours that they worked during any period of time within the past three years**."

122. The total number and identities of the plaintiffs who may "opt in" to this collective action may be determined from the records of Defendant, and they may easily and quickly be notified of the pendency of this action.

123. Named Plaintiffs are similar to these current and former employees of Defendant because he and these potential "opt in" plaintiffs have been unlawfully denied payment of a minimum wage for all of the hours that they worked, as mandated by the FLSA.

124. Named Plaintiffs' experiences with Defendant's failure to remunerate taxicab drivers on the basis of a rate at least equal to the applicable statutory minimum wage is typical of the experiences of the potential opt in plaintiffs.

125. Defendant's failure to pay all wages due at a rate that was at least equal to the applicable statutory minimum wage is common to Named Plaintiffs and all similarly situated employees.

126. Overall, the Named Plaintiffs' experiences as taxicab drivers who worked for Defendant is typical of the experience of the potential opt-in plaintiffs.

**COUNT I – FLSA MINIMUM WAGE VIOLATIONS**

127. Named Plaintiffs reallege and readopt the allegations of paragraphs 1 through 126 of this Complaint, as though fully set forth herein.

128. During the statutory period, Named Plaintiffs and all similarly situated employees worked for Defendant, and they were not paid at least the applicable statutory minimum wage for all of the hours that they worked, as mandated by the FLSA.

129. Defendant failed to compensate Named Plaintiffs and all similarly situated employees on the basis of a rate that was at least equal to the applicable statutory minimum wage.

130. The potential opt in plaintiffs are similarly situated to Named Plaintiffs because they were all employed as taxicab drivers by Defendant, were all compensated in the same manner, and were all subject to Defendant's common policy and practice of failing to pay its taxicab drivers on the basis of a rate that was at least equal to the applicable statutory minimum wage, in accordance with the FLSA.

131. This reckless practice violates the provisions of the FLSA, 29 U.S.C. § 206(a)(1)(C). As a result, Named Plaintiffs and all similarly situated employees who opt into this collective action are each entitled to an amount equal to their unpaid minimum wages as liquidated damages.

132. All of Defendant's conduct, as alleged and described above, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

133. As a result of the foregoing, Named Plaintiffs and all similarly situated employees have suffered damages.

***WHEREFORE***, Named Plaintiffs and all similarly situated employees who join this collective action demand, with respect to their FLSA claims, the following:

(a) Designation of this action as a collective action on behalf of the Named Plaintiffs and the potential opt in plaintiffs whom he seeks to represent, in accordance with the FLSA;

(b) Prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated employees, apprising them of the pendency of this collective action and permitting them to assert timely FLSA claims in this action by filing individual consent to sue forms in accordance with 29 U.S.C. § 216(b);

(c) Equitable tolling of the statute of limitations from the date of the filing of this complaint until the expiration of the deadline for filing consent to sue forms under 29 U.S.C. § 216(b);

(d) Leave to add additional opt in plaintiffs by motion, the filing of written consent forms, or any other method approved by this Court;

(e) Judgment against Defendant for an amount equal to the unpaid minimum wages of Named Plaintiffs and all similarly situated employees who opt into this collective action;

(f) A declaratory judgment, stating that the practices complained of herein are unlawful under the FLSA;

(g) Judgment against Defendant for an amount equal to the unpaid back wages of Named Plaintiffs and all similarly situated

employees who opt into this collective action, computed on the basis of the applicable statutory minimum wage, as liquidated damages;

(h) Judgment against Defendant, stating that its violations of the FLSA were willful;

(i) To the extent liquidated damages are not awarded, an award of prejudgment interest;

(j) All costs and attorney's fees incurred in prosecuting these claims; and

(k) For such further relief as this Court deems just and equitable.

**FDUPTA RULE 23 CLASS ACTION ALLEGATIONS**

134. Named Plaintiffs jointly asserts Rule 23 class claims on behalf of the Putative Class defined as follows:

> FDUPTA CLASS: **All persons employed by Gulf Coast as taxicab drivers in and around Hillsborough County, Florida from the four years preceding the filing of this Complaint through the date of final judgment in this action**.

135. Named Plaintiffs and all similarly situated employees of Gulf Coast are members of the Putative FDUPTA Class described herein.

136. The number of persons belonging to the Putative Rule 23 Class herein is so numerous that joinder of all such persons would be impracticable. While the exact number and identities of all such persons are unknown at this time and will only be obtainable through appropriate discovery, Named Plaintiffs are informed and reasonably believe, and on this basis allege, that the Putative Rule 23 Class described herein includes over 100 persons.

137. Disposition of the FDUTPA claims of Named Plaintiffs and all similarly situated employees of Gulf Coast in a class action will benefit all parties and this Court.

138. A well-defined community of interest is presented by the Putative Rule 23 Class herein, because each member of the Putative Rule 23 Class has an interest in being classified as an employee rather than an independent contractor, obtaining appropriate legal relief for the harm alleged in this Complaint, and obtaining adequate compensation for the common damages which Named Plaintiffs and all other persons similarly situated have suffered as a result of Defendant's actions.

139. Each member of the Putative Class described herein has performed labor for Defendant at Defendant's request at some time during the Class Period, while the members of the Putative Class were unlawfully misclassified as independent contractors.

140. In the instant case, a class action is superior to any other available method in order to promote and achieve the fair and efficient adjudication of the claims presented herein.

141. The prosecution of separate actions by individual members of the Putative Rule 23 Class described herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the Putative Class, resulting in the establishment of incompatible standards of conduct for Defendant, and creating the risk that separate adjudication of individual Class members' claims would, as a practical matter, either dispose of the interests of other Class members who had no opportunity to join those separate suits, or substantially impede or impair the ability of these other Class members to protect and vindicate their own interests.

142. Common questions of law and fact exist in this case with respect to the Putative Rule 23 Class, and these common questions predominate over any separate, individual issues only affecting members of the Class in their individual capacities.

143. At some time during the Class Period, all of the individuals who belong to the Putative Rule 23 Class herein have been employed by Defendant as taxicab drivers, and as such, have been unlawfully subjected to a uniform, consistent set of unfair employment practices by Defendant, as described more fully herein.

144. The common questions of fact involved in this case include, without limitation: Whether each member of the Putative Class has been subjected to the same company-wide policies and practices related to the manner in which they conduct their work, the methods that they use in conducting their work, the manner in which they are compensated for their work, the manner in which Defendant keeps track of their working hours, and the manner in which Defendant keeps records reflecting their hours of work; and (2) whether Defendant evaded its legal obligation to deduct all applicable employment taxes from the earnings of each member of the Putative Class in order to gain an unfair competitive advantage over other employers in Hillsborough County, who deduct all applicable employment taxes from their employees' earnings as required by law.

145. The common questions of law involved in this case include, without limitation: (1) whether Class Members performed labor for Defendant as employees or as independent contractors; (2) whether Defendant's uniform policies and practices related to the relationship between Gulf Coast and its taxicab drivers are unlawful, unfair, and/or deceptive business practices that violate FDUTPA; and (3) whether Plaintiff and all other persons similarly situated

are entitled to general and/or special damages as a result of any of FDUPTA violations complained of herein, and if so, the nature of such damages.

146. The claims of the Named Plaintiff in this case are typical of those of the Class Members which he seeks to represent, in that Named Plaintiffs and each member of the Class have sustained damages, and are facing irreparable harm because of, and arising out of, a common course of conduct engaged in by Defendant, as complained of herein.

147. The claims of Named Plaintiffs coincide with, and are not antagonistic to, the claims of other Class Members whom the Plaintiff François seeks to represent.

148. Named Plaintiffs will fairly and adequately represent and protect the interests of the members of the Putative Class whom he seeks to represent. Named Plaintiffs do not have any interests that are adverse to the interests of the members of the Putative Class described herein.

149. Counsel for Plaintiff is experienced, qualified, and generally able to conduct complex class action legislation.

150. The relief sought in this action is necessary to restore to members of the Putative Class the money and property which Defendant has illegally acquired through the unlawful treatment of each Class Member as described herein.

151. Plaintiffs intend to send notice to all members of the Putative Class to the extent required by Federal Rule of Civil Procedure 23. The names and addresses of the Putative Class members are readily available from Defendant's records.

**COUNT III – VIOLATIONS OF FDUPTA BY RULE 23 CLASS**

152. This claim is brought by Named Plaintiffs on behalf of all similarly-situated drivers.

153. Named Plaintiffs re-allege and incorporates by reference, as though fully set forth herein, paragraphs 1 through 127 of this Complaint.

154. This is an action for damages plus attorney's fees and court costs under FDUTPA.

155. Named Plaintiffs and all other similarly situated FDUPTA Class Members are "persons" within the meaning of FDUTPA, Fla. Stat. § 511.211(2).

156. Gulf Coast is engaged in "trade or commerce" within the meaning of FDUTPA, and Named Plaintiffs and the FDUPTA putative class members are "consumers" as defined by FDUPTA.

157. In violation of FDUTPA, Gulf Coast engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of its trade and commerce, and has thereby deprived Named Plaintiffs, and all other persons similarly situated, of fundamental rights and privileges guaranteed to all employees under Florida law.

158. In an effort to avoid providing its drivers with the minimum benefits and protections afforded employees under Florida law, Gulf Coast has willfully, uniformly, and unilaterally classified each and every one of its drivers as independent contractors rather than employees, despite the fact that the factual circumstances of the relationship between Gulf Coast and its drivers clearly demonstrate that Gulf Coast taxicab drivers are in fact employees of the company.

159. The actions of Defendant, in misclassifying Named Plaintiffs and all members of the FDUPTA Putative Class as independent contractors, are unfair and deceptive trade practices prohibited under Florida law.

160. By and through Gulf Coast's unfair, unlawful, and/or deceptive business practices as described herein, Named Plaintiffs and all other Class Members have suffered injuries in fact

in that Defendant has obtained valuable property, money and/or services from Named Plaintiffs and all other FDUPTA Class Members, and have deprived Named Plaintiffs and all other FDUPTA Class Members of valuable rights and benefits guaranteed to them by law.

161. All of the acts described herein are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent, and/or unscrupulous, and thereby constitute unfair, unlawful and/or deceptive business practices in violation of FDUTPA.

162. Named Plaintiffs and all persons similarly situated are entitled to and do seek such relief as may be necessary to restore to them the money and property which Defendant has acquired, or of which Named Plaintiffs, and all others similarly situated, have been deprived, by means of the above-described unfair, unlawful and/or deceptive business practices.

163. Named Plaintiffs and all persons similarly situated are further entitled to, and hereby seek a declaration, that the business practices described above are unfair, unlawful and/or deceptive, and seek further injunctive relief to restrain Defendant from engaging in any of the above-described unfair, unlawful and/or deceptive business practices in the future.

164. As a result of the unfair, unlawful and/or deceptive business practices described herein, Named Plaintiffs, and all persons similarly situated, have suffered and will continue to suffer irreparable harm unless Defendant is restrained from continuing to engage in these unfair, unlawful and/or deceptive business practices.

***WHEREFORE***, Named Plaintiffs and all similarly situated employees who join this class action demand, with respect to their class FDUPTA claims, the following:

(a) Judgment against Defendant and a determination by this Court that Defendant violated the FDUTPA;

(b) Actual damages suffered by Named Plaintiffs and members of the Class as a result of Defendant's FDUTPA practices;

(c) All costs and attorney's fees incurred in prosecuting these claims; and

(d) For such further relief as this Court deems just and equitable.

**COUNT III – CONVERSION UNDER FLORIDA COMMON LAW**
**(as to Plaintiff François only)**

165. On or around June 22, 2015, Plaintiff François signed a "lease agreement" with Defendant.

166. This Agreement, titled "Agreement for Independent Vehicle-For-Hire Operators," is attached hereto as Exhibit A.

167. Under this Agreement, Plaintiff François was required to post a bond with Defendant in the amount of $1500. See Exhibit A, Schedule A, p. 2B.2.

168. The Agreement also provides that "[a]ny unused posted bond monies will be returned thirty (30) days after written request by the Driver, who posted the bond, less any shortages, charges and/or damages." See Exhibit A, Schedule A, p. 2B.2.

169. On January 14, 2016, Plaintiff François requested return of his bond in writing.

170. On January 14, 2016, Plaintiff François informed Gulf Coast that he would no longer be working for Gulf Coast as a taxicab driver.

171. On January 20, 2016, Defendant acknowledged in writing that Plaintiff François had requested return of his bond.

172. Under the terms of the Agreement, Defendant's duty to return Plaintiff's bond monies became absolute on February 13, 2016.

173. Defendant never returned Plaintiff's bond money.

174. By knowingly failing to return Plaintiff's bond moneys to him within thirty days, Defendant breached the Agreement.

175. Plaintiff's bond monies constituted property within the meaning of Fla. Stat. § 812.012(4).

176. By knowingly failing to return Plaintiff's bond monies to him, Defendant willfully deprived Plaintiff of the possession and use of property that rightfully belonged to him, in violation of Fla. Stat. § 812.012.

177. By knowingly failing to return Plaintiff's bond monies to him, Defendant converted Plaintiff's property to its own use, in violation of Florida common law.

178. Plaintiff François reasonably relied on Defendant's promise to return these bond monies within thirty days in accordance with the terms of the Agreement.

179. Plaintiff François was injured by Defendant's conversion and theft of the bond monies that he had posted with Defendant in good faith.

183. Defendant wrongfully appropriated Plaintiff François's bond monies after Plaintiff François informed Defendant that he was no longer going to work for Defendant as a taxicab driver.

184. As a result of Defendant's conversion, Plaintiff François was deprived of the possession, use, and enjoyment of his property, in the form of the bond monies that Plaintiff François rightfully owned.

***WHEREFORE***, Plaintiff François demands:

a) A jury trial on all issues so triable;

b) That process issue, and that this Court take jurisdiction over the case;

c) Actual damages suffered by Plaintiff François as a result of Defendant's conversion, as measured by the value of Plaintiff's bond monies;

d) All costs and attorney's fees incurred in prosecuting these claims; and

e) For such further relief as this Court deems just and equitable.

**JURY TRIAL DEMAND**

Plaintiff demands trial by jury as to all issues so triable.

Dated this ——23rd day of May, 2016.

Respectfully submitted,

**Formatted:** Font: Font color: Black

**LUIS A. CABASSA**
Florida Bar Number: 0053643
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue
Suite 300
Tampa, Florida 33602
Main No.: 813-224-0431
Direct No.: 813-379-2565
Facsimile: 813-229-8712
E-mail: lcabassa@wfclaw.com
E-mail: twells@wfclaw.com
**Attorneys for Plaintiff**

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this ——23rd day of May, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and notice of filing by first-class mail to the following non-CM/ECF participants:

Gulf Coast Transportation, Inc.
c/o: Justin Morgaman, Registered Agent
1701 W. Cass Street
Tampa, FL, 33606

I further certify that I mailed the foregoing document and notice of filing by E-mail to:

Thomas M. Gonzalez
Thompson Sizemore Gonzalez & hearing, P.A.
201 North Franklin Street, Suite 1600
Tampa, Florida 33602
Email: tgonzalez@tsghlaw.com

**LUIS A. CABASSA**