UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTIME FRANCOIS and
RENETTE ORDEUS, on behalf
of themselves and all others
similarly situated,

        Plaintiffs,

v.                                            Case No.  8:16-cv-1061-T-24 TBM

GULF COAST TRANSPORTATION,
INC.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court on Plaintiffs' Motion for Conditional Certification and Court Authorized Notice Pursuant to 29 U.S.C. § 216(b).  (Doc. No. 17).  Defendant opposes the motion.  (Doc. No. 33).  As explained below, the motion is denied without prejudice.

**I.  Background**

Plaintiffs Estime Francois and Renette Ordeus allege that they were formerly employed by Defendant Gulf Coast Transportation, Inc. as taxicab drivers and that Defendant misclassified them (and all other taxicab drivers) as independent contractors.  As a result, Plaintiffs contend that due to Defendant's willful misclassification of them as independent contractors, Defendant did not pay taxicab drivers any wages at all, in violation of the minimum wage requirements of the Fair Labor Standards Act ("FLSA").  Plaintiffs intend to bring their FLSA claim as a collective action.

Plaintiffs describe their employment with Defendant in their amended complaint.  (Doc. No. 6).  In the amended complaint, Plaintiffs cite to, but fail to attach, an agreement that all

taxicab drivers entered into with Defendant titled "Agreement for Independent Vehicle-For-Hire Operators" (the "Agreement"), which outlines their relationship with Defendant. (Doc. No. 6, ¶ 74, 166; Doc. No. 12-1).

According to Plaintiffs, Defendant holds itself out as a taxicab company. Defendant owns taxicabs and certificates enabling its taxicabs to be used as taxicabs within Hillsborough County. Taxicab drivers, including Plaintiffs, entered into twelve-month Agreements with Defendant to lease one of its taxicabs for a certain period of time for a certain amount of money. Specifically, they could lease a taxicab for a 12-hour period for $86, a 24-hour period for $98, or a weekly period for $560. The drivers also were required to make a $2 to $10 refundable bond payment in addition to the stated lease fee. In return, the drivers would drive the taxicabs for that period of time and keep all of the money they generated.

Defendant outfitted the taxicabs with a radio communication system so that the drivers could receive transportation requests that Defendant dispatched. Defendant also outfitted the taxicabs with a fare meter and a laptop that could accept credit card payments.

While the Agreement explicitly states that the taxicab drivers are independent contractors, Plaintiffs allege that they were, in fact, employees because Defendant controlled the manner in which they performed their work and made them economically dependent on Defendant. As examples of Defendant's control, Plaintiffs allege that: (1) Defendant set their work schedules (Doc. No. 6, ¶ 26); (2) Defendant enforced a "no ride refusal" policy that prohibited drivers from safely dropping off disruptive or violent passengers before completion of their transport (Doc. No. 6, ¶ 28); (3) Defendant controlled the drivers through the use of reprimands, fines, suspension, and termination (Doc. No. 6, ¶ 113); (4) Defendant assigned

passengers to drivers at Tampa International Airport, which required drivers to wait for passengers at the airport—sometimes for hours without being assigned a passenger to transport (Doc. No. 6, ¶ 63-65); and (5) Defendant prohibited drivers from refusing rides to passengers to whom Defendant had offered discounted fares, even though that meant that the driver made less money for the rides (Doc. No. 6, ¶ 112).

Defendant processed the credit card payments and subtracted credit card proceeds earned from the lease payments owed. The excess credit card proceeds, if any, were paid to the drivers. This excess, if any, was the only compensation that Plaintiffs received from Defendant. Plaintiffs contend that drivers needed to work approximately 80 hours per week just to make enough money to cover their lease payments to Defendant.

According to Plaintiffs, as well as opt-in plaintiffs Dieune Refuse and Franklin Joseph, all drivers were treated similarly. (Doc. No. 17-4, ¶ 3; Doc. No. 17-5, ¶ 4; Doc. No. 22, ¶ 6; Doc. No. 39, ¶ 5). Furthermore, all four of these plaintiffs state that they are aware of many other drivers who want to join in this lawsuit. (Doc. No. 17-4, ¶ 11; Doc. No. 17-5, ¶ 13; Doc. No. 22, ¶ 15; Doc. No. 39, ¶ 13).

## II.  Motion for Conditional Certification and Court Authorized Notice

Pursuant to 29 U.S.C. § 216(b), Plaintiffs move the Court to conditionally certify a putative class of drivers that Plaintiffs describe as follows:

> All persons employed by [Defendant] as taxicab drivers in Florida from the three years preceding the filing of th[e] complaint through the date of final judgment in this action.

(Doc. No. 17, p. 2). Defendant opposes the motion, arguing that: (1) Plaintiffs fail to state an FLSA claim; and (2) Plaintiffs have not shown that there are similarly situated drivers that want

to opt into this action. Because the Court has already ruled in its order on Defendant's motion to dismiss that Plaintiffs have stated an FLSA claim (Doc. No. 40), the Court need only address Defendant's argument that Plaintiffs have not shown that there are similarly situated drivers that want to opt into this action.

### A. Framework for Analyzing Motions for Conditional Certification and Notice

Pursuant to 29 U.S.C. § 216(b), an action to recover for violations of the FLSA may be brought by one or more employees on their own behalf and on behalf of other similarly situated employees. If an employee-plaintiff wants to maintain an opt-in collective action against his employer for FLSA violations, the plaintiff must demonstrate that he is similarly situated to the proposed members of the collective class and that there is a desire by them to join the lawsuit. See Hipp v. Liberty National Life Insurance Company, See 252 F.3d 1208, 1217 (11th Cir. 2001); Dybach v. State of Florida Dept. of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). An employee interested in joining, or opting into, the lawsuit must file a written consent in order to become a party to the suit. See 29 U.S.C. § 216(b).

The Eleventh Circuit has suggested a two-tiered approach for district courts to use when determining whether an opt-in class should be certified:

> The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

> The second determination is typically precipitated by a motion for "decertification" by the defendant[,] usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims.

Hipp, 252 F.3d at 1218 (quoting Mooney v. Aramco Services Co., 54 F.3d 1207, 1213-14 (5th Cir. 1995)).[1]

### B. Similarly Situated Requirement

In evaluating whether conditional certification is appropriate, this Court considers: (1) whether there are other employees who desire to opt-in, and (2) whether these other employees are similarly situated to Plaintiffs with respect to their job requirements and with regard to their pay provisions. See Kubiak v. S.W. Cowboy, Inc., 2014 WL 2625181, at *8 (M.D. Fla. June 12, 2014)(citation omitted). Defendant disputes that Plaintiffs can satisfy either element.

### 1. Desire to Opt-In by Other Employees

In order for this Court to conditionally certify the proposed class, Plaintiffs must show that there is a reasonable basis for their contention that there are other employees who desire to opt into this litigation. See id. (citations omitted). "This burden is not onerous." Id. (citation omitted). As explained by one court:

> Evidence of other employees who desire to opt in may be based on

---

[1] Mooney was overruled in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).

> affidavits, consents to join the lawsuit, or expert evidence on the existence of other similarly-situated employees. In making this showing, a plaintiff cannot rely on speculative, vague, or conclusory allegations. Instead, the plaintiff must offer detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary. Indeed, a plaintiff must proffer a minimum quantum of evidence to warrant the creation of a collective [action]. The mere anticipation that others may want to join the lawsuit or the mere presence of a uniformly adverse compensation policy is insufficient by itself. Moreover, [c]ertification of a collective action and notice to a potential class is not appropriate to determine *whether* there are others who desire to join the lawsuit.

Id. (internal citations and quotation marks omitted).

Defendant argues that Plaintiffs have not shown that there is sufficient interest in joining in this lawsuit by other drivers. Upon review of the record, the Court cannot determine how many drivers would make up a class of drivers that entered into a Hillsborough County Agreement with Defendant to lease its taxicabs.[2]

In their amended complaint with respect to a different claim based on similar facts, Plaintiffs state that a class of drivers within Hillsborough County, Florida[3] that were employed within *four years* before the date of this lawsuit (April 29, 2016) would consist of over 100 people. (Doc. No. 6, ¶ 136). However, for their FLSA claim, the relevant period is a maximum

---

[2]Plaintiffs entered into an Agreement with Defendant and allege that all drivers enter into this type of lease agreement. The specific agreement referenced in the amended complaint specifically describes the use of vehicles in Hillsborough County. Thus, as explained later in this Order, if this Court were to certify a class of drivers that were similarly situated to Plaintiffs, the class would be limited to, at a minimum, those drivers that entered into Agreements that describe the use of vehicles in Hillsborough County. Additionally, as explained later, the class would be limited to drivers that leased a taxicab from Defendant.

[3]Plaintiffs make this allegation with respect to their claim under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). (Doc. No. 6, ¶ 136). It is unclear to the Court why Plaintiffs' limited their proposed FDUTPA class to drivers within Hillsborough County, Florida, but they seek to conditionally certify a Florida class of drivers for their FLSA claim.

of *three years* prior to this lawsuit, so it is not clear that the proposed FLSA class is over 100 drivers during the relevant three-year period.  Furthermore, as explained later, the class of drivers would need to be limited to those people that leased their taxicabs from Defendant,[4] and this adds an additional level of uncertainty regarding the size of the potential FLSA class.

If Plaintiffs were able to provide the Court with information that the size of the potential FLSA class is large enough to necessitate collective treatment, the next inquiry would be whether Plaintiffs have actually demonstrated that there is interest by other drivers in pursuing an FLSA claim against Defendant.  Currently, there are two named plaintiffs and four opt-in plaintiffs that want to pursue an FLSA claim against Defendant.  (Doc. No. 20, 36-38). Additionally, four of these plaintiffs have filed declarations stating that they are aware of many other drivers who want to join in this lawsuit.  Assuming that these opt-in plaintiffs had signed a Hillsborough County lease Agreement, this minimal evidence would be sufficient to show that there is actual interest to join in this lawsuit by other Hillsborough County drivers that leased taxicabs from Defendant.  However, as explained below, the proposed class of drivers does not appear to be similarly situated.

### 2.  Similarly Situated

Even assuming that Plaintiffs could show that the size of the potential FLSA class is large enough to necessitate collective treatment, Plaintiffs have not shown that the proposed class of Florida drivers are similarly situated to Plaintiffs with respect to their job requirements.[5]

---

[4]Some drivers provided their own vehicle.

[5]The Court acknowledges that Plaintiffs have established that the proposed class of drivers is similarly situated with regard to their pay provisions.  There does not appear to be a dispute that all drivers' pay provisions were the same—Defendant did not pay the drivers

The Court notes that Plaintiffs only need to show that their positions are similar; Plaintiffs are not required to show that their positions are identical. See Grayson v. K Mart Corp.. 79 F.3d 1086, 1096 (11th Cir. 1996)(citations omitted). Furthermore, the similarly situated requirement "is more elastic and less stringent than the requirements found in Rule 20 (joinder) and Rule 42 (severance)." Id. at 1095.

Defendant argues that Plaintiffs have not met the similarly situated requirement for two reasons: (1) there is no evidence that drivers outside of Hillsborough County were similarly situated to the Hillsborough County drivers; and (2) there are different types of drivers that drove for Defendant. As explained below, the Court is persuaded by Defendant's arguments.

Defendant first argues that the proposed class of drivers is not similarly situated, because there is no evidence that drivers outside of Hillsborough County were similarly situated to the Hillsborough County drivers. Plaintiffs want to conditionally certify all drivers within the state of Florida; however, they only describe Defendant's employment practices within Hillsborough County. The Court agrees that this is problematic.

Plaintiffs provided the Court with Defendant's website address, which indicates that Defendant provides transportation services throughout the west coast of Florida. Plaintiffs' amended complaint, however, only references driving within Hillsborough County, and the Agreement that Plaintiffs refer to in the amended complaint describes a driving relationship within Hillsborough County. As such, the Court agrees that conditionally certifying a class of all drivers within the state of Florida is not appropriate.

As discussed in this Court's order on Defendant's motion to dismiss, this Court will have

---

directly; drivers were only paid via fares paid by the customers that they drove.

to consider the Hillsborough County Public Transportation Commission Rules when evaluating the amount of control exercised by Defendant over Plaintiffs. Such an inquiry is necessary in order to resolve the issue of whether Plaintiffs were employees subject to the protections of the FLSA or independent contractors. If drivers in other counties are subject to other counties' public transportation rules, then the evaluation of Defendant's control over them would be different than the evaluation of Defendant's control over Plaintiffs, and as such, drivers in other counties may not be similarly situated to Plaintiffs. Accordingly, a class of Florida drivers is not appropriate.

Next, Defendant argues that the proposed class of drivers is not similarly situated, because there are different types of drivers that drove for Defendant. Specifically, not all drivers leased a vehicle from Defendant, and Defendant argues that the employee versus independent contractor analysis for these "private owner" drivers will differ from the analysis for the drivers that leased their taxicabs from Defendant. The Court agrees that if a driver owns his own taxicab, that would affect the analysis regarding the amount of control that Defendant exerts over the driver. This is another reason for the Court's conclusion that conditional certification is not warranted on the record before it.

Based on the above, the Court denies Plaintiffs' motion for conditional certification. Plaintiffs may move again for certification, and the Court will reconsider its ruling, if they narrow their proposed class of drivers to those that signed a Hillsborough County Agreement to lease a taxicab from Defendant. Additionally, Plaintiffs would need to provide the Court with information regarding the size of the potential FLSA class. Finally, Plaintiffs would need to provide evidence that all of the opt-in plaintiffs signed a Hillsborough County Agreement to

lease taxicabs from Defendant.

### III.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Plaintiffs' Motion for Conditional Certification and Court Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Doc. No. 17) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 2nd day of August, 2016.

                                    Susan C. Bucklew
                                    SUSAN C. BUCKLEW
                                    United States District Judge

Copies to:
Counsel of Record