### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**ESTIMÉ FRANÇOIS and RENETTE ORDEUS,**
**on behalf of themselves and all others similarly**
**situated,**

         **Plaintiff,**

**vs.**                                   **Case No.: 8:16-cv-01061-SCB-TBM**

**GULF COAST TRANSPORTATION, INC.,**

         **Defendant.**
_____/

### DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION FOR
### RULE 23 CLASS CERTIFICATION

The Defendant, Gulf Coast Transportation, Inc. ("Gulf Coast"), responds in opposition to the Plaintiffs' motion for Rule 23 class certification, (Dkt. 29), ("motion"), in which they ask the Court to certify, and designate them as the representatives of, a class described as "[a]ll persons employed by Gulf Coast as taxicab drivers in and around Hillsborough County, Florida from the four years preceding the filing of th[e] . . . Complaint through the date of final judgment in this action." (Dkt. 29 at 2).

### I.      Factual and Procedural Background

The Plaintiffs Estime Francois and Renette Ordeus prosecute these claims in a three-count amended complaint alleging in relevant part violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA")(Count I); and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")(Count III(A));[1]   Gulf Coast moved to dismiss the amended

---

[1] The complaint includes no Count II but two "Count IIIs." To differentiate between each Count III, the first will be referred to as "Count III(A)," the second as "Count III(B)."

complaint for its failure to state a claim upon which relief may be granted. (Dkt. 12). The Court has denied the motion with respect to the FLSA and FDUPTA claims. (*Id.*). The Plaintiffs have moved for conditional certification of an FLSA collective action and court-authorized notice to potential opt-in plaintiffs. (Dkt. 17). The Court has denied the motion for conditional certification but without prejudice.[2] (Dkt. 41). The motion now before the Court seeks certification of a Rule 23 class to pursue a FDUTPA claim. The class sought comprises "All persons employed by Gulf Coast as taxicab drivers in and around Hillsborough County, Florida from four years preceding the filing of this Complaint through the date of final judgement in this action." (Dkt. 6, p. 21, P 134).

The putative class is alleged to consist of more than 100 persons.  (Dkt. 6, p. 80, ¶ 136). In the motion and one of the affidavits offered in support of it, the class is described as including 300 persons. (Dkt. 29, p. 229). The Plaintiffs represent that "they have produced evidence from which the Court should conclude that this case is ripe for class treatment." (Dkt. 29, p. 222). The only evidence which the Plaintiffs have produced in support of their motion is the same affidavits which were submitted in support of the motion for conditional certification of the FLSA opt-in class. None of these affidavits, which obviously were drafted (and in one case, discussed below, redrafted) with only the FLSA in mind, speaks to any element of a claim for deceptive or unfair trade practice.[3] None constitutes evidence

---

[2] Importantly, in allowing the Plaintiffs to make another application for the opt-in class the Court provided a clear description of the showing that will be required as part of that effort, including the "need to provide evidence that all of the opt-in plaintiffs signed a Hillsborough County Agreement to lease cabs from the Defendant." (Dkt. 41, p. 326).

[3] Specifically, the Plaintiffs have filed declarations by Francois, Ordeus, Refuse and Joseph. In fact, they have filed two declarations by Ordeus. The first filing occurred on July 1, 2016. (Dkt. 17-5). The declaration is dated June 29, 2016. But after having been notified by the Clerk of a need to refile the declaration using the proper event form (Dkt. 19), the Plaintiffs filed a different declaration (Dkt. 21). Although dated on the same date as the original, the second declaration is substantially different. For instance, it contains the sworn assertion that the

sufficient to justify the certification of a Rule 23 class.

The Defendant does not seek to reargue its motion to dismiss the Plaintiffs' FDUPTA claim, or its opposition to the motion for conditional certification, but parts of both ruling must be addressed in the context of a motion to certify a Rule 23 class consisting of members pursuing a claim under FDUPTA. As a beginning point, the Plaintiffs allege that they are employees of Gulf Coast as defined by the FLSA. (Dkt. 6, ¶ 11) ("At all times material hereto, named Plaintiffs were employed by Defendants as taxicab drivers."). This allegation is expressly incorporated into the FDUPTA claim which the Plaintiffs attempt to plead in count III(A). (Dkt. 6, p.83, ¶ 152). But the Plaintiffs also allege, in the FDUPTA count, that "named Plaintiffs and FDUPTA putative class members are 'consumers' *as defined by FDUPTA*." (Dkt. 6, ¶ 156, emphasis added).[4] There is a significant difference in analyzing issues relating to consumers invoking FDUPTA on the one hand, and employees seeking to enforce that law through a suit for damages demanding judgement for "actual damages suffered by members of the class" and attorney's fees on the other hand. (Dkt. 6, p. 86-87, ad damnum clause following ¶ 164). An employee is not a consumer under FDUPTA. A consumer is clearly not an employee. In the context of FDUTPA, several courts have defined "consumer" as "one who has engaged in the purchase of goods or services." Leon v. Tapas & Tintos, Inc., 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014).

Defendant "set [her] work schedule," that she could not contact potential passengers directly" and she had no opportunity to compile customer lists or grow her own business." These allegations are in fact false. With respect to the sworn statement that the Defendant set her work schedule, the contention is inconsistent with the first declaration submitted by Ordeus, and the others, who claim only that they worked the hours they worked because they had to in order to avoid poverty.

[4] Despite their pleadings the Plaintiffs in their motion for certification state an expectation that the Defendant will argue a lack of FDUPTA standing because the Plaintiffs are not consumers. The Plaintiffs argue in anticipation of that defense and in doing so acknowledge that the amendment to the law replaced the word "consumer" with "person." It is therefore clear that the pleading of themselves as "consumers" was an intentional act intended to have meaning.

In its Order denying the Defendant's motion to dismiss the amended complaint, the Court characterized the Plaintiffs' FDUPTA claim as alleging that Gulf Coast's misclassification of them as independent contractors "resulted in substantial costs savings to Defendant (due to not having to pay employment taxes) and gave Defendant an unfair competitive advantage as a taxicab company." (Dkt. 40, page 312). In fact, the Plaintiffs expressly allege in their amended complaint that because of the limited number of the permits issued in Hillsborough County, Florida, ". . . the *only* realistic option that is available to a person who wishes to work as a taxicab driver . . . is to enter into a 'lease' agreement with Defendant Gulf Coast, *or with one of the few other taxicab companies that competes with Gulf Coast.*" (Dkt. 6, p. 70, ¶ 72, emphasis added).[5] The Plaintiffs do not allege that any competitor in any market is competitively disadvantaged by Gulf Coast's failure to payroll taxes. They do not allege that Gulf Coast gained any market advantage. To the contrary, they allege that the small number of companies that comprise the market relevant to the Plaintiffs market do so through agreements like those to which Gulf Coast is a party. More importantly in the context of standing, which requires actual injury, and class certification, which requires evidence as opposed to pleadings, a violation of FDUPTA which benefitted Gulf Coast's competitive position would not necessarily cause damage to the Plaintiffs. Indeed, if it allowed Gulf Coast to charge the Plaintiffs less for purchased services, it would be to the Plaintiffs' financial gain. Neither would any of the Plaintiffs suffer loss because of the Defendant's violation of a public policy in the context of the case which is now pled.

The Plaintiffs do not travel on a theory that the Defendant violated public policy. In

---

[5] The agreement which the Plaintiffs signed is not a lease agreement. It is as noted above an agreement which sets forth the terms and conditions on which drivers may purchase services.

fact, in their motion the Plaintiffs contend that their FDUPTA claims are "*all* based on Gulf Coast's misclassification of it [sic] technicians [sic] as independent contractors. Plaintiff[s'] FDUPTA claims are based on Gulf Coast's deceptive and knowing misrepresentation to its taxicab drivers that they were independent contractors, when they were in actuality treated as employees. This was a deceptive act intended to mislead all of the taxicab drivers and, as a result of this act, the taxicab drivers suffered actual damages." (Dkt. 29, p. 228)(emphasis added). The damages which they claim to have suffered expressly on account of the Defendant's misclassifying their employment status are undescribed "negative tax implications," loss of their rights to seek workers and unemployment compensation benefits and a reduction in contributions paid on their behalf for Medicare and Social Security programs. (Dkt. 6, p. 62, ¶ 14(b).

The Plaintiffs confirm this description of their FDUPTA claims by arguing in support of certification that, "Here, *all* of the claims are based on a substantially identical set of fact and are grounded *on the same legal theories*; namely, that Defendant misclassified all taxicab drivers as independent contractors *and deceived them into signing contracts to that effect*." (Dkt. 29, p. 233, emphasis added).[6] The Plaintiffs assert that "By misclassifying its employees, Gulf Coast induced its taxicab drivers to 'rent' vehicles and work extremely long hours in order to pay Gulf Coast for their use." (Dkt. 29, p. 226). There are no facts proffered to give flesh to this contention, which seems to be that by selling services without any

---

[6] In the sentence which follows this language, the Plaintiffs argue that "If a business fails to pay proper payroll taxes, that constitutes an unfair method of competition because the business would be paying less taxes than a competing business that follows the tax laws and therefore would have more money to best those competing businesses." (*Id.*). Of course this contention is directly contradicted by the allegations of the amended complaint, cited above, which describe a person who wants to operate a taxicab to have no choice except to enter inti a "lease agreement" with the Defendant or someone else, and so the issue would involve a question of fact.

promise of compensation or other benefit except the services themselves, the Defendant euchred the Plaintiffs into signing an agreement which they would have spurned had they been told that they would be paid the minimum wage. But who says, in the context of a FDUPTA claim, that all taxicab drivers were misled? None of the Plaintiffs. They do not even swear that they were misled.

Regardless, therefore, of whether deception is or is not required to prove a violation of FDUPTA, it is clear that the theory of these Plaintiffs' case alleging the statute's violation includes and is dependent upon an allegation of deception. It is even clearer, in fact expressly alleged, that deception is central to their claim to entitlement for damages as the cause of those injuries. That deception cannot be proven or defended against in the context of a class action, because there is no evidence to show that any deceptive acts were common to all putative class members. In the context of a FDUPTA claim, a driver, who is better at operating a taxicab, who does not rely on dispatch, who has her or his own marketing materials and secures regular riders or otherwise makes more than enough to live on, or more importantly was not fooled by the Defendant's actions and does not in any way feel cheated. The Plaintiffs offer opinions that others work in the same conditions as them. They do not say that all or even any of them did not understand that they were purchasing services and nothing else. They cannot, or at least do not argue that any others were misled. They allege that they were induced into signing the Agreement by being misclassified. They do not say how.

Additionally, in the context of this motion, whether the drivers are FLSA employees or FDUPTA consumers will inform the question of whether a class can be certified and what

it will look like. An employee is not a consumer under FDUPTA, that much is made certain by reference to the Florida cases which have wrestled with the issue of FDUPTA standing, all of which involve a change to the statute which broadened the class of persons and entities protected by FDUPTA, from only consumers, to "persons," including consumers and, thus far in this case, employees. But regardless of whether or not an employee may claim the benefits of FDUPTA, he or she does not do so as a consumer. And if a taxicab driver suffers a violation of that law as a consumer (and some of the agreements with Gulf Coast are between the company and a corporate entity, which would have standing to bring a FDUPTA action to the same extent as an individual and therefore eligible for class inclusion), he or she does not lose the payment of payroll taxes, workers or other benefits or social security payments, because none would be due in any event. A business that does not pay a consumer of its services enjoys no advantage because no competing entity would have to pay those monies. And the Plaintiffs' contention that they are employees is based on their economic dependency on the Defendant for "enough money to live."[7] But what of others, who do not need or rely solely on dispatch, or who own their vehicles, or are able to make enough to "live," whatever that amount may be, by purchasing services from Gulf Coast.

Thus the Defendant does not contest the Court's conclusion that FDUPTA prohibits not just "deceptive acts [but also] prohibits unfair methods of competition and unfair acts or practices." But it does contend that as consumers, the Plaintiffs have not pled facts showing a

---

[7] Francois: "The resultant substandand income forced me to work 108-120 hours per week to avoid living in poverty." (Dkt. 17-4, ¶ 10). Ordeus: "To afford to pay for the taxicab for the taxicab and make enough money to live, I was required to work approximately 105 hours per week." (Dkt. 17-5, ¶ 11). Refuse: "To afford to pay for the taxicab and make enough money to live, I was required to work approximately 120 hours per week." (Dkt. 22, ¶ 13). Joseph: "To afford to pay for the taxicab and make enough money to live, I was required to work approximately 16 hours per day and seven days per week." (Dkt. 39, ¶ 11).

violation of FDUPTA either by deception or unfair advantage and they have suffered no damages which they could recover based on a theory that the Defendant made out better in the market because it did not pay payroll taxes. Such a suit might be brought by a competitor, but not a consumer.[8] The Plaintiffs do not allege they did not get what they sought or that they were damaged, as consumers of what they got or did not get, or that the Defendant unfairly garnered a competitive edge over the competition by not paying payroll taxes, or payroll. And so consumers cannot be members of the same Rule 23 class as one made up of employees.

## II.    Legal Argument

To show entitlement to Rule 23 class certification, the Plaintiffs must demonstrate that they have standing and that the putative class satisfies the four requirements of Federal Rule of Civil Procedure 23(a), "as well as at least one of the requirements set forth in Rule 23(b)." Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1265 (11th Cir. 2009). "Under Rule 23(a), every putative class first must satisfy the prerequisites of [(1)] numerosity, [(2)] commonality, [(3)] typicality, and [(4)] adequacy of representation." Id. The Federal Rules of Civil Procedure explain each element:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

---

[8] FDUPTA's purposes include the protection of "the consuming public and legitimate business enterprises from those who engage in in unfair methods of competition, or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." It is not FDUPTA's goal to root out and stop unconscionable acts, but rather to protect consumers and businesses from those acts which affect trade and commerce.

Fed. R. Civ. P. 23(a). To satisfy their burden under Federal Rule of Civil Procedure 23(b), the Plaintiffs rely on Rule 23(b)(3). (Dkt. 29 at 14, 15). This "additionally requires findings: (1) that common questions of law or fact predominate over questions affecting only individual class members ('predominance'); and (2) that a class action is superior to other available methods for adjudicating the controversy ('superiority'). Vega, 564 F.3d at 1265. "Evidentiary proof is required to show compliance with Rule 23," and "[t]he party seeking class certification must prove compliance by a preponderance of the evidence." In re Photochromic Lens Antitrust Litig., No. 8:10-CV-00984-T-27EA, 2014 WL 1338605, at *5 (M.D. Fla. Apr. 3, 2014) (internal citations omitted) (denying motion for class certification).[9]

In determining whether class certification is appropriate, and in contrast to the light obligation imposed by the FLSA, the trial court must conduct a "rigorous analysis" and be satisfied that each of Rule 23's prerequisites have been met. See, e.g., Comcast, 133 S. Ct. at 1432. "[I]f a question of fact or law is relevant to [class certification], then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." Brown v. Electrolux Home Products, Inc., 817 F.3d 1225, 1234 (11th Cir. 2016) (emphasis added) (internal citations and quotation marks omitted). Indeed, determining whether Rule 23 has been satisfied "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'" See, e.g., id. (citations omitted).

The Plaintiffs' only evidentiary support for class certification consists of conclusory affidavits signed by former Gulf Coast drivers. (Dkt. 29 at 19-27). They do not meaningfully address the elements required to show entitlement to proceed as class action under Rule 23.

---

[9] The Plaintiffs make no effort to provide evidentiary proof of the class,

Federal courts emphasize that "[Rule 23] does not set forth a mere pleading standard." Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013). Rather, the Plaintiffs, to satisfy their burden to show entitlement to a class action, must "prove that there are *in fact* sufficient numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," and "must also satisfy *through evidentiary proof* at least one of the provisions of Rule 23(b)." Id. (internal citations omitted) (emphases added). The Plaintiffs have not met this burden.

**A.    The Plaintiffs fail to provide evidence which would establish a cause of action under FDUTPA and/or lack standing, and the class is ill-defined.**

The Plaintiffs' case proceeds on the theory that Gulf Coast misclassified them and the putative class members as independent contractors when they were in fact employees, yet they expressly allege that they are "'consumers' as defined by FDUTPA." (Dkt. 6, ¶¶ 19, 156). (collecting cases). If the Plaintiffs were, as they allege, consumers, then they were consumers of services provided by Gulf Coast. Those services, set forth in detail in the Agreement, were all provided on terms that were completely fulfilled. Gulf Coast never stated that the Plaintiffs were anything other than independent business people renting a car. Thus, to the extent the Plaintiffs were in fact consumers, as they allege, then they fail to state a cause of action under FDUTPA because there was no deception or unfairness.

In its Order denying the motion to dismiss the Plaintiffs FDUPTA claim, the Court did not treat the allegation that the Plaintiffs were "consumers." The cases which are cited in that Order do not discuss a plaintiff's status as a consumer. To the contrary, those decisions all deal with the situation in which the issue to be decided is whether an employee, who very

definitely is not a consumer within the meaning of FDUPTA is nevertheless a protected person under that law even though he or she is not a consumer.

The Court's Order denying the motion to dismiss cited the Southern District's holding in Seijo v. Casa Salsa, Inc., 2013 WL 6184969 (S.D. Fla. Nov. 25, 2013), for the principle that a plaintiff could pursue a claim based on allegations that she "had signed an agreement classifying her as an independent contractor and that the misclassification allowed the defendant to avoid paying payroll taxes for her." (Order, Dkt. 40, page 314). But Seijo does not involve facts similar to those which obtain or are pled here. In Seijo the plaintiff contracted to provide services, as a dance instructor. The agreement expressly classified her as an independent contractor but implicit in the facts of the case is that her undertaking was to provide services as a dance instructor.[10] It was in fact the common fact which would bind the members of a class. But in the case of taxicab drivers who purchased services from the Defendant those drivers did not promise or agree to do anything for the company except pay for as many or as few services as they purchased. The Agreement does not obligate the Plaintiffs or anyone else to provide any service whatever. If the Plaintiffs are to proceed on a theory of control, they must begin with a showing that they ever promised to do anything for Gulf Coast.

To be sure, Seijo informs that nothing in FDUPTA requires misrepresentation and "a rational factfinder could conclude that if a business fails to pay proper payroll taxes, that constitutes an unfair method of competition because the business would be paying less than a

---

[10] The agreement in Seijo was attached to the pleading filed in that case and is attached to this motion. It expressly required the employee to teach up to 16 hours a day, arrive 15 minutes early to any event or gathering, have at least two nights of scheduled group classes, work any promotional hours requested by the company and teach any class added to the employees schedule.

11

competing tax business that follows the law." At *6. But that is so only if the taxes are owed and they are owed only if the drivers are in fact employees. But the Plaintiffs seek to have a class certified now, based on four affidavits which allege controls which are not part of the agreement which is the basis for a class. If that is so it can only be on proof of that extra-contractual control which by necessity must be determined by individual trial. One Plaintiff says he must work 16 hours per day seven days per week "to make enough money to live." There is no definition of what he defines as living much less that the definition is common to him and anyone else.

If the taxicab drivers are to be held to be employees, that holding will not be required by or based on the contract, because nothing in the contract requires any of the Plaintiffs to do anything to benefit the company except pay for services. Employment status will have to be found based on the actual treatment of employees and while the Plaintiffs have been found to have alleged enough to avoid dismissal they have produced no evidence which would support the conclusion that any number of individuals share the characteristics of the Plaintiff.

The Plaintiffs' affidavits allege that they were required to drive taxis bearing the name and logo of Gulf Coast and that the taxicabs were equipped with radios through which Gulf Coast dispatchers assigned passengers to drivers. Francois says that all drivers were "*dependent* on the dispatcher for most, if not all of their passengers." (Dkt. 17-4, ¶ 4, emphasis). Ordeus, Refuse and Joseph all swear that the assignment of passengers by dispatch was the "sole means *allowed* for doing business aside from the rare walk-on passenger who hailed a taxi from the street." (Dkt. 21, ¶ 6; 22, P 8; 39, ¶ 7). In her second declaration, Ordeus added a new averment, that she "relied on and *exclusively* used

Defendant's dispatch system, through which I *received the great majority* of *their* passenger calls, to perform my job," (Dkt. 21, ¶12) and "I *could not* contact potential directly (Dkt. 21, ¶ 13, ). Instead, *the great majority* of their passenger calls were routed through Defendant's dispatch service" (Dkt. 21, ¶ 13.

Additionally, the Plaintiffs and other allege that were subject to a grooming policy and were restricted in their ability to discharge violent or belligerent passengers. Ordeus, Refuse and Joseph complain that they were forbidden to eject these fares "prematurely." (Dkt. 19, ¶ 7). Francois asserts that he could not eject the violent and disruptive at all. (Dkt. 17-4, ¶ 6).

While the Defendant continue to assert that these allegation are insufficient to establish employment status as a matter of law, in the context of this motion, to justify certification they must be shown to be true of the class sought. They are not.

### B.     The Plaintiffs fail to demonstrate numerosity because they offer only one conclusory allegation to support their argument.

"Mere speculation, bare allegations, and unsupported conclusions are inadequate" to prove numerosity. See Barlow v. Marion Cty. Hosp. Dist., 88 F.R.D. 619, 625 (M.D. Fla. 1980) (finding plaintiff's burden on numerosity satisfied where plaintiffs submitted an estimate "supported by . . .  underlying statistics"); see also, e.g., Abby v. Paige, 282 F.R.D. 576, 578 (S.D. Fla. 2012) (denying certification where sole evidence of numerosity consisted of bare allegation based on "common sense estimate"). In the instant case, the only evidence of numerosity is Dieune Refuse's allegation that "Defendant employs at any one time more than 300 drivers, or more [sic]." (Dkt. 29 at 8, 25). This is inadequate because the Plaintiff does not explain the factual basis for her speculation. In addition, the figure is overbroad because Refuse does not allege all 300 of the drivers were deceived. See Zeidman v. J. Ray

13

McDermott & Co., 651 F.2d 1030, 1038 (5th Cir. 1981) (finding estimate as to size of purported class of non-institutional sellers of particular securities was overbroad where plaintiffs estimated class size based on total volume of sales of particular security, and that statistic did not exclude institutional investors); Sandlin v. Shapiro & Fishman, No. 95-213-CIV-FTM-17D, 1997 WL 155418, at *3 (M.D. Fla. Mar. 18, 1997) (finding plaintiff's estimates as to numerosity conclusory and overbroad).

> ### C.     The Plaintiffs fail to demonstrate commonality or typicality.

Federal Rule of Civil Procedure 23(a)(2) requires Plaintiffs to show that their claims "depend upon a common contention . . . . [the] truth or falsity [of which] will resolve an issue that is *central to the validity* of each one of the claims *in one stroke*." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (emphasis added).

In the instant case, the Plaintiffs propose one common issue is "whether Defendant misclassified the Putative Class as independent contractors." However, "the [universal] applicability of a[n] [issue] does not make it a 'common' question. . . .What matters is the type of evidence that the parties will submit to prove and disprove the [issue]." Brown, 817 F.3d at 1240 (in purported class action alleging breach of warranty with respect to purchase of washing machines that were allegedly defective because they accumulated mildew, finding that defendant's assertion of defense of "misuse" against all plaintiffs was not a "common question" because the defendant "w[ould] need to prove that the mildew in the washing machines arose from the class members' misuse," which "w[ould] require individual proof"). Here, the Plaintiffs offer no common evidence of independent contractor status. In fact, the evidence on this issue will not be common to the entire class because different drivers operate

14

under different agreements and exercise varying degrees of autonomy.

Similarly, given the varied facts of each driver's relationship with Gulf Coast, the named Plaintiffs do not allege, except by conclusion, that they are typical of class members. See, e.g., Abby, 282 F.R.D. at 578 (denying certification where plaintiff offered no "record evidence" of typicality). For example, they do not indicate whether they signed agreements for twelve-hour, twenty-four- hour, or weekly terms, or whether Gulf Coast trained them. In particular, they do not explain how they can represent drivers who owned their own cabs or those who obtained the majority of their business through means other than dispatch. The issue of whether private owner drivers are independent contractors will turn on facts specific to those drivers and may be decided differently than it will be for those who merely leased cabs.

The second purportedly common issue proposed by the Plaintiffs is "whether there is an established public policy that employers should correctly characterize their employees as employees instead of independent contractors, and pay the proper taxes for those employees." (Dkt. 29 at 11). However, that issue is not "central to the validity of each one of the claims." Dukes, 564 U.S. 338, 349 (2011). Instead, it is merely one factor, out of many, that may be considered in determining whether a defendant's acts or omissions constitute "unfair" practices under FDUTPA. On this point, the Third District Court of Appeal adopted a provision of the Federal Trade Commission Act ("FTC Act"),[11] which provides that

> [i]n determining whether an act or practice is unfair, the Commission *may* consider established public policies as evidence *to be considered with all other evidence*. Such public policy considerations *may not serve as a primary basis for such determination*.

---

[11] FDUTPA was patterned off of the Federal Trade Commission Act ("FTC Act"), so the provisions and interpretations of the FTC Act are entitled to "due consideration and great weight" in interpreting FDUTPA. Millennium Commc'ns & Fulfillment, Inc., 761 So. 2d at 1262.

Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen., Dep't of Legal Affairs, State of Fla., 761 So. 2d 1256, 1263 (Fla. 3d DCA 2000) (emphases added) (quoting 15 U.S.C. § 45(n)) (holding promoter's postcard was not deceptive under FDUTPA). Clearly, if the public policy factor "may not serve as a primary basis" for determining whether Gulf Coast's alleged misconduct violated FDUTPA, then the issue cannot be deemed central to the validity of the Plaintiffs' claims. Id.

**D.    Class certification should be denied because the Plaintiffs fail to satisfy Rule 23(b)(3)'s prerequisites.**

The Plaintiffs seek to certify the proposed class under Rule 23(b)(3), which requires them to demonstrate through evidentiary proof "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see also Comcast, 133 S. Ct. at 1432. This "inquiry is far more demanding than Rule 23(a)'s commonality requirement," Vega, 564 F.3d at 1270 (citations omitted), and requires the trial court to "take a 'close look' at whether common questions predominate over individual ones," Comcast, 133 S. Ct. at 1432. The Plaintiffs cannot satisfy their burden on these elements. Simply put, the Plaintiffs cannot demonstrate that any issue will be susceptible of proof by class-wide evidence, because they have not identified any class-wide evidence. They have not even suggested the type of class-wide evidence on which they hypothetically plan to rely.

**1.    Individual issues predominate.**

The Plaintiffs contend that common issues predominate over individual ones because "the central common issue in this case is whether Defendant misclassified its employees as

16

independent contractors." (Dkt. 29 at 14, 15). However, "the applicability of a[n] [issue] does not make it a 'common' question. . . .What matters is the type of evidence that the parties will submit to prove and disprove the [issue]." Brown, 817 F.3d at 1240 (in purported class action alleging breach of warranty with respect to purchase of washing machines that were allegedly defective because they accumulated mildew, finding that defendant's assertion of defense of "misuse" against all plaintiffs was not a "common question" because the defendant "w[ould] need to prove that the mildew in the washing machines arose from the class members' misuse," which "w[ould] require individual proof"). In the instant case, as discussed above, the Plaintiffs cannot demonstrate by a preponderance of the evidence that class issues predominate over individual issues because they offer no class-wide evidence to support their claim to employee status.

In FDUTPA cases alleging employee misclassification, courts have found that where the parties' agreement, on its face, militates against a finding of employment status, a class action is inappropriate because the plaintiffs' case will "require extracontractual, individualized proof as to each [purported employee]'s conduct with [the defendant], defeating a finding of predominance." Carroll, 2014 WL 1928669, at *9 (denying certification); Scantland v. Jeffry Knight, Inc., Case No: 8:09-cv-1985-T-17TBM, 2011 WL 4530006 (M.D.Fla.2011) (same).

For example, in Carroll v. Lowes Home Centers, Inc., the plaintiff was "an installer for Lowe's" and alleged Lowe's misclassified him as an independent contractor rather than an employee, in purported violation of FDUTPA. 2014 WL 1928669. He moved to certify a class of "all persons who installed products for Lowe's," id. at *2, but the court denied his

motion, finding that individual issues would predominate over class issues because the "standard form agreements" executed by the parties, "on their face, state[d] the installers [we]re 'independent contractors,' and "vest[ed] the right to control the method and manner of the work in the installer, not [the defendant]." Id. *8.

Against this, the plaintiff pointed out that the parties executed two other documents which required that the

> installers, *inter alia,* promote Lowe's by leaving behind brochures, exercise good personal hygiene, wear Lowe's "independent contractor" apparel, complete installation in the timeframe set forth in the Standards, treat complaints as a second chance to satisfy customers, not swear, not make derogatory remarks about Lowe's, and use Lowe's authorized forms. The Guidelines set forth steps for corrective action where an installer "fails to perform at an acceptable level in craftsmanship or professionalism."

Id. at *8. Nevertheless, the court found that the these restrictions did not afford Lowe's sufficient control over the employees to support a finding of employment. Id. at *8 (collecting cases). Because the class-wide agreements between the parties did not suggest the proposed class members were employees, the court found class certification was inappropriate because a trial would require individualized proof as to "each installer's experience, relationship, and interaction with [the defendant]." Id. at *9. Specifically, "[t]o establish liability, an individualized analysis of the [Restatement] factors in the actual practice of [the defendant] and each party would be required . . . ." Id. For instance, "[v]ariations exist[ed]" as to "whether the installers [we]re required to attend training sessions" and "whether Lowe's required the installers to follow the Standards." Id.

The Plaintiffs here have not yet identified any class-wide evidence of an unwritten or tacit employment relationship, nor is there any evidence that Gulf Coast sought to establish

such a relationship, or that it did so in a deceptive manner. The only intimation of such evidence comes in the affiants' declarations that they "observed" an unspecified number of "other drivers" who "were subject to the same rules" and "practices." (Dkt. 29 at 19, ¶ 3); (Dkt. 29 at  22, ¶¶ 3, 4); (Dkt. 29 at 25, ¶ 4). However, as discussed in Gulf Coast's motion to dismiss, these "rules" and "practices" do not indicate employee status. (Dkt. 12 at 1-16). Moreover, the affiants do not explain how any class members came to understand that these unwritten "rules" and "practices" existed.

On the Plaintiffs' current evidentiary showing, it seems each class member will have to produce evidence as to precisely what he or she was told, by whom, and whether the speaker had actual or apparent authority to speak on behalf of Gulf Coast, among other things. The Plaintiffs produce no evidence to suggest otherwise. Similarly, there will be individualized inquiries into defenses, such as whether each employee is equitably estopped from now claiming employee status despite signing the Agreement averring otherwise.

Against this argument, the Plaintiffs cite In re FedEx Ground Package Sys., Inc., Employment Practices Litig., 2008 WL 7764456 (N.D. Ind. Mar. 25, 2008), which certified a FDUTPA class of allegedly misclassified employees. (Dkt. 29 at 7). The Plaintiffs also cite Phelps v. 3PD, Inc., 261 F.R.D. 548 (D. Or. 2009) for similar reasons. However, the instant case is distinguishable from FedEx and Phelps for the reason noted by Scantland:

> In FedEx Ground, it was not necessary for the court to make an individual analysis of other factors in the actual practice of the parties, because the plaintiffs did not contend that those factors made them employees, but rather that employment status could be determined primarily on the terms of the Operating Agreement.

2011 WL 4530006, at *9. The instant case is the opposite. The Plaintiffs seek to demonstrate employment status in spite of the Agreement, not based on it, and there is no class-wide evidence to support the Plaintiffs' claim of misclassification.

### 2.  A class action is not superior to alternatives.

In the instant case, a class action is not superior to other methods of adjudication because the highly individualized inquiries, as discussed above, pose "serious challenges to the efficiency and manageability of a class action proceeding." Vega, 564 F.3d at 1278. Several federal district courts have denied class certification where plaintiffs pursue unpaid wages under both the FLSA and state law, reasoning that "the Rule 23 opt-out requirement is incompatible with the FLSA § 216(b) active opt-in requirement."[12] Where, as here, plaintiffs' state-law claim proceeds on roughly the same facts as the FLSA claim and seeks the same damages, putative class members who do not wish to participate in this litigation will likely be confused as to how to effectuate their intent, given the conflict between opting in under the FLSA and opting out under Rule 23.

### CONCLUSION

For the foregoing reasons, Gulf Coast respectfully requests this Court deny the Plaintiffs' Motion. In the alternative, Gulf Coast moves this Court to stay consideration of the Motion until this Court decides the pending motion to dismiss.

---

[12] Nadreau v. Lush Cosmetics NY, LLC, No. 2:10-CV-298-FTM-99, 2012 WL 3852231, at *7 (M.D. Fla. Aug. 13, 2012), report and recommendation adopted, No. 2:10-CV-00298-FTM, 2012 WL 3853443 (M.D. Fla. Sept. 5, 2012); Calderone v. Scott, No. 2:14-CV-519-FTM-29CM, 2015 WL 4395623, at *6 (M.D. Fla. July 16, 2015).

Respectfully submitted,

/s/ Thomas M. Gonzalez
Thomas M. Gonzalez
Florida Bar No.: 192341
Tristan Reiniers
Florida Bar No. 0119358
Thompson, Sizemore, Gonzalez, & Hearing, P.A.
201 North Franklin Street, Suite 1600
Tampa, Florida 33602
Telephone: (813) 273-0050
Facsimile: (813) 273-0072
tgonzalez@tsghlaw.com
treiniers@tsghlaw.com
Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished this 8th day of August, 2016, by CM/ECF electronic filing to the Clerk of Court and to the following:

Luis A. Cabassa
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Avenue, Suite 300
Tampa, Florida  33602
Main # 813-224-0431
Direct# 813-379-2565
Fax: 813-299-8712
lcabassa@wfclaw.com
twells@wfclaw.com

/s/ Thomas M. Gonzalez
Attorney

21