**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ESTIMÉ FRANÇOIS, and RENETTE
ORDEUS, on behalf of themselves and
all others similarly situated,

          Plaintiffs,

v.                                  **Case No.: 8:16-cv-01061-SCB-TBM**

GULF COAST TRANSPORTATION, INC.,

          Defendant.

_____/

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

The Defendant, Gulf Coast Transportation, Inc. replies to the Plaintiffs' opposition to

Gulf Coast's motion for summary judgment (Dkt. 78). The Plaintiffs defend against that

motion only with citation to, and argument based upon, their own statements. But those

statements are comprised largely of conclusory statements, which cannot create an issue of

fact, and/or are not probative, much less determinative, of employee status.

The Plaintiffs contend that the Agreement for Independent Vehicle-For-Hire Operators

("Agreement") to which the Plaintiffs' were parties "could be terminated unilaterally by Gulf

Coast." Paragraph Four of the Agreement expressly provides the only grounds upon which Gulf

Coast may terminate the Agreement: a driver's nonpayment or breach of the Agreement. (Dkt. 72-

2, Exs. A & B). The Plaintiffs allege no competent evidence which would support a finding that

the contract is not enforceable as written or that there is in fact a dispute as to whether Gulf Coast

may in fact terminate the Agreement unilaterally.

The Plaintiffs argue that "Gulf Coast negotiated a [single] flat fee with Tampa International

Airport for transportation services to and from the airport" which drivers could not alter. (Dkt. 78-5, ¶ 17). They allege no predicate of personal knowledge of this fact and so the alleged "fact" is both conclusory and hearsay. More importantly, Gulf Coast could not negotiate such a flat fee with the Airport because neither it nor the Airport sets rates; the PTC does. PTC Rule 1-20.001(1)(d) and (3)(e), (Dkt. 79 at 1, 2), provide that taxicabs *may* charge "no more than" a minimum fare of fifteen dollars and *may* charge a flat rate of "no more" than twenty-five dollars. (Dkt. 72-2, Exs. A & B, ¶8; Dkt. 72-3, ¶ 12); (Dkt. 78-5, ¶ 17). The optional flat rate, used for a short ride, obviously can be larger than the regular meter rate. It therefore benefits the driver, but he or she nevertheless is free to use it, or not. Drivers have been held to be independent contractors even where the cab company did in fact unilaterally set flat rates. *Bui v. Minority Mobile Sys., Inc.*, No. 15-21317-CIV, 2016 WL 344969, at *3 (S.D. Fla. Jan. 28, 2016).

"Gulf Coast provided training." (Dkt. 78-4, ¶ 15; Dkt. 78-5, ¶ 15). While the PTC Rules encourage companies to offer training, neither PTC rule nor the Agreement requires training to be taken as a condition of leasing a vehicle or related services. It is in fact just another service offered by Gulf Coast.

The Plaintiffs contend that Gulf Coast "conducted periodic reviews and evaluations of [their] performance" (Dkt. 17-4, ¶ 15; Dkt. 17-5, ¶ 15) and "reserved the right to fine or reprimand drivers for failing to comply with their policies and procedures." (Dkt. 17-4, ¶ 20; Dkt. 17-5, ¶ 20). The Agreement expressly states that drivers are "free from interference or control on the part of [Gulf Coast] in the operation of [their] business . . . ." (Dkt. 72-2, Exs. A & B, ¶8). While the Plaintiffs' contentions might cause a dispute of fact, that dispute would not be material. The Plaintiffs do not describe the purpose, use or consequence of these "evaluations." They do not allege what possible effect an evaluation could have on a driver who leases a taxicab pursuant to

an Agreement which allows for termination only for specified reasons, which do not include substandard performance. Neither do the Plaintiffs' describe the means by which Gulf Coast has "reserved the right to fine or reprimand. There are no such reservations in the Agreement.

The Plaintiffs complain that the one-year term of the Agreement indicates a long-term relationship which indicates employee status. (Dkt. 78 at 18). The Agreement sets terms but does not include a commitment by a driver to lease cabs or obtain other services with any frequency or regularity. It is only a promise to make available taxicabs and related equipment and services at specified rates. Gulf Coast could not change the terms of the contract, including those related to pricing, because the Plaintiffs could choose not to purchase services at any time (Dkt. 72-2, Exs. A & B, ¶ 5) or to obtain them elsewhere. There was no long-term agreement.

The Plaintiffs complain that if they chose to lease taxicabs on a twelve- or twenty-four-hour basis, Gulf Coast "controlled the hours and times that [they] worked" by allowing them to pick up and return the taxicabs only in two different, three-hour windows. (Dkt. 78-4, ¶¶ 8, 9; Dkt. 78-5, ¶¶ 8, 9). As a matter of applicable law a taxicab schedule like the Plaintiffs' is flexible and therefore militates against employee status. *N.L.R.B. v. Associated Diamond Cabs, Inc.*, 702 F.2d 912, 921 (11th Cir. 1983).

The Agreement "mandated that . . . [the Plaintiffs] operate the vehicle 'reasonably, prudently, and courteously,' and 'in a careful manner.'" (Dkt. 17-4, ¶ 11; Dkt. 17-5, ¶ 11). PTC Rule 1-6.001(11) requires that drivers be courteous. A business leasing its vehicles for use in another business does not become an employer by allowing only the reasonable or prudent operation of those vehicles. The vehicles are the property of the lessor, who can impose

3

whatever conditions it wishes.

Gulf Coast retained advertising revenue. (Dkt. 17-4, ¶ 7; Dkt. 17-5, ¶ 7). But this merely "buttresses the uncontested fact that [the cab owner], not the driver, owns the taxicab and the advertising thereon" and it is therefore "totally irrelevant to the issue of [the owner]'s control over the lessees. . . ." *Associated Diamond*, 702 F.2d at 921.

The Plaintiffs proffer the conclusion that Gulf Coast "suspended drivers who refused to take fares from th[e] dispatch system." (Dkt. 17-4, ¶ 14; Dkt. 17-5, ¶ 14). The Agreement expressly states that the Plaintiffs "[were] free to perform all or part of [their] services independently of [Gulf Coast]'s communication system [or] data system . . . ." (Dkt. 72-2 at Exs. A & B, ¶8). By its terms, therefore, the Agreement does not allow the alleged suspension. The Plaintiffs in fact do not allege that they had to use the dispatch system, only that they could be suspended for refusing a fare. The Plaintiffs do not allege that they ever were suspended and so their averments are hearsay. And Gulf Coast has clarified the situation to which the Plaintiffs presumably refer, testifying that if a driver chooses to use dispatch, even though the driver does not have to, and chooses to accept a trip from dispatch, even though the driver does not have to, then he or she cannot thereafter abandon that fare without being suspended *from the dispatch system he or she did not have to use* for a specified period of time. (Dkt. 72-4, ¶ 5). A dispatch system would have little value to a driver if would-be riders did not use it because they were often stranded by cabs that never arrived. The NLRB has held that such an arrangement does not show in favor of employment status. *AAA Cab Servs., Inc. & Indep. Taxi Drivers Union*, 341 NLRB 462, 465 (2004), even if a majority of drivers' passengers are obtained through the dispatch system, so long as its use is voluntary. *Associated Diamond*, 702

4

F.2d at 923.

The Plaintiffs argue that "Gulf Coast . . . prohibited their drivers from contacting potential customers directly." (Dkt. 78 at 8). In fact the Plaintiffs swear only that they were "*unable* to contact customers directly" and "*unable* to . . . develop [their] own business." (Dkt. 78-4, ¶ 24; Dkt. 78-5, ¶ 24) (emphasis added). The Plaintiffs do not allege that Gulf Coast prohibited them from doing so. In fact, it is undisputed that Gulf Coast provided drivers with blank business cards specifically to develop their own business by allowing potential riders to contact the driver directly without use of dispatch. (Dkt. 72-5; 72-6).

Finally, the Plaintiffs allege that Gulf Coast negotiated flat fees by which drivers could transport passengers from events. (Dkt. 17-4, ¶¶ 16, 17; Dkt. 17-5, ¶¶ 16, 17). Again the allegation is hearsay. Nevertheless, the Plaintiffs contend that "[i]f [they] refused customers under these contracts, Gulf Coast reserved the right to unilaterally terminate the Agreement." (*Id.*, ¶ 16). However, the Plaintiffs do not allege the source of this "reservation," much less that it was ever exercised, much less that they ever were forced to work at one of these "events." By express terms of the Agreement the Plaintiffs were "free to perform all or part of [their] services independently of [Gulf Coast]'s . . . concession agreements." (Dkt. 72-2 at Ex. A, ¶8; Dkt. 72-2 at Ex. B, ¶ 8).

WHEREFORE, Gulf Coast respectfully requests that the Court render judgment as a matter of law in favor of Gulf Coast.

Respectfully submitted,

/s/ Thomas M. Gonzalez
Thomas M. Gonzalez
Florida Bar No.: 192341
Tristan Reiniers

Florida Bar No. 0119358
Thompson, Sizemore, Gonzalez, & Hearing, P.A.
201 North Franklin Street, Suite 1600
Tampa, Florida 33602
Telephone: (813) 273-0050
Facsimile: (813) 273-0072
tgonzalez@tsghlaw.com
treiniers@tsghlaw.com
Attorneys for the Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished

this 12th day of May, 2017, by CM/ECF electronic filing to the Clerk of Court and to the

following:

Paul W. Rebein, Esquire
Rebein Brothers, P.A.
100 Ashley Drive S., Suite 610
Tampa, Florida 33602
Service-Rebein@rbr3.com

/s/ Thomas M. Gonzalez
Attorney