UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ESTIME FRANCOIS and
RENETTE ORDEUS,

      Plaintiffs,

v.                                      Case No. 8:16-cv-1061-T-24 TBM

GULF COAST TRANSPORTATION,
INC.,

      Defendant.
_____/

**ORDER**

This cause comes before the Court on Defendant's Motion For Summary Judgment. (Doc. No. 72). Plaintiffs oppose the motion. (Doc. No. 78). With the Court's permission, both Plaintiffs and Defendant filed reply briefs. (Doc. No. 81, 82). Because genuine issues of material fact exist, this Court denies Defendant's motion for summary judgment on Plaintiffs' Fair Labor Standards Act claim. The Court declines to exercise supplemental jurisdiction over Plaintiff's claim under Florida's Deceptive and Unfair Trade Practices Act.

**I. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must draw all inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006)(citation omitted). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. See id. (citation omitted). When a moving party has

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

Plaintiffs Estime Francois and Renette Ordeus allege that they were formerly employed by Defendant Gulf Coast Transportation, Inc. as taxicab drivers and that Defendant misclassified them as independent contractors.[1]  In the summer of 2015, Plaintiffs entered into agreements with Defendant, titled "Agreement for Independent Vehicle-For-Hire Operators" (the "Agreement"), which purport to outline their relationship with Defendant.  (Doc. No. 78-2; Doc. No. 78-3).

Defendant holds itself out as a taxicab company.  Defendant owns taxicabs and certificates enabling its taxicabs to be used as taxicabs within Hillsborough County.  Taxicab drivers, including Plaintiffs, entered into twelve-month Agreements with Defendant to lease one of its taxicabs for a certain period of time for a certain amount of money.  Specifically, they could lease a taxicab for a 12-hour period for $86, a 24-hour period for $98, or a weekly period for $560.  (Doc. No. 78-4, ¶ 5; Doc. No. 78-5, ¶ 5).  In return, the drivers would drive the taxicabs for that period of time and would earn all of the money they generated while driving.

Defendant outfitted the taxicabs with a radio communication system so that the drivers could receive transportation requests that Defendant dispatched.  Defendant also outfitted the taxicabs with a fare meter and a laptop that could accept credit card payments.

---

[1] In their complaint, they state that Francois worked for Defendant until January 14, 2016 and that Ordeus worked for Defendant until February 2016.  (Doc. No. 6, ¶ 36, 37).

While the Agreement explicitly states that the taxicab drivers are independent contractors (Doc. No. 78-2, ¶ 8; Doc. No. 78-3, ¶ 8), Plaintiffs allege that they were, in fact, employees because Defendant controlled the manner in which they performed their work and made them economically dependent on Defendant.

As a result, Plaintiffs filed an amended complaint asserting three claims. (Doc. No. 6). First, Plaintiffs contend that due to Defendant's willful misclassification of them as independent contractors, Defendant did not pay them any wages at all, in violation of the minimum wage requirements of the Fair Labor Standards Act ("FLSA").

Second, Plaintiffs contend that the misclassification of them as independent contractors resulted in substantial cost savings to Defendant (due to its not having to pay employment taxes) and gave Defendant an unfair competitive advantage as a taxicab company. Therefore, Plaintiffs contend that Defendant violated Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

Third, Plaintiff Francois, individually, asserted a conversion claim under Florida common law due to Defendant's failure to return taxicab bond money that he had paid. However, the Court granted Defendant's motion to dismiss this claim. (Doc. No. 40).

**III. Motion for Summary Judgment**

Currently pending before this Court is Defendant's motion for summary judgment on Plaintiffs' FLSA and FDUTPA claims. Accordingly, the Court will address Defendant's motion as to each claim.

**A. FLSA Minimum Wage Claim**

Defendant argues that it is entitled to summary judgment on Plaintiffs' FLSA claim,

because Plaintiffs were independent contractors, not employees. When determining whether a person is an employee or an independent contractor under the FLSA, the Eleventh Circuit in Scantland v. Jeffrey Knight, Inc. has provided the following guidance:

> [C]ourts look to the "economic reality" of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence. This inquiry is not governed by the "label" put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether "the work done, in its essence, follows the usual path of an employee." . . . [M]any courts have used [the following six factors] as guides in applying the economic reality test:
> > (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
> > (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> > (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
> > (4) whether the service rendered requires a special skill;
> > (5) the degree of permanency and duration of the working relationship; [and]
> > (6) the extent to which the service rendered is an integral part of the alleged employer's business.

Scantland v. Jeffry Knight, Inc., 721 F.3d 1308, 1311-12 (11th Cir. 2013)(internal citations omitted). Furthermore, the Scantland court noted:

> No one factor is controlling, nor is the list exhaustive. . . . The weight of each factor depends on the light that it sheds on the putative employee's dependence on the alleged employer, which in turn depends on the facts of the case.

Id. at 1312 n.2 (quotation marks and citations omitted). The Scantland court made clear that "the overarching focus of the inquiry is economic dependence." Id. at 1312.

The parties dispute the facts underlying two very important factors in this case—the nature and degree of Defendant's control over the manner of Plaintiffs' work and Plaintiffs' opportunity for profit and loss. According to Plaintiffs, Defendant exerted significant control

4

over them and there was no opportunity to make a profit based on the following: (1) Defendant suspended or reprimanded drivers who refused to take fares from the dispatch system; (2) Defendant conducted periodic performance reviews and evaluations; (3) Defendant negotiated flat fees for airport passengers and required that Plaintiffs charge those fees; if Plaintiffs refused to drive these customers, Defendant could unilaterally terminate their Agreement; (4) Defendant reserved the right to fine or reprimand drivers for failing to comply with its policies and procedures; (5) Defendant reserved the right to refuse to renew an Agreement and could unilaterally terminate their Agreement; (6) Plaintiffs were unable to contact customers on their own to grow a client list and grow their business; instead, they could only drive customers obtained through the dispatch system or those who hailed them on the street; and (7) Defendant implemented a policy whereas Plaintiffs could not refuse transportation to unruly or troublesome passengers that Plaintiffs had already picked up.[2]  (Doc. No. 78-4; Doc. No. 78-5).

Defendant, on the other hand, offers the following evidence regarding control and Plaintiffs' opportunity for profit and loss: (1) drivers have complete discretion regarding whether to accept any dispatched call; (2) drivers are not penalized for failing to accept a dispatched call; (3) some drivers choose not to use Defendant's dispatch system at all; (4) drivers can solicit

---

[2] The Court has not considered Plaintiffs' numerous allegations of control by Defendant, which in fact consist of control asserted over drivers through the Hillsborough County Public Transportation Commission Rules ("PTC Rules").  To the extent that Defendant is merely requiring compliance with the PTC Rules, such will not be considered control by Defendant. See NLRB v. Associated Diamond Cabs, Inc., 702 F.2d 912, 922 (11th Cir. 1983)(stating that "regulation imposed by governmental authorities does not evidence control by the employer," and therefore, "employer imposed regulations that incorporate governmental regulations do not evidence an employee-employer relationship").  However, if Plaintiffs show pervasive control by Defendant that exceeds to a significant degree the scope of the PTC Rules, then such can be evidence of an employment relationship  Id. (citations omitted).

business on their own; (5) Defendant does not require any driver to wait for, pick up, or take passengers to or from the airport; (6) drivers establish their own hours of when to work; (7) drivers are not subject to supervision, fines, or discipline from Defendant; (8) drivers could distribute business cards to passengers to grow their own business; and (9) a significant amount of fares generated through driving can come from a driver's own efforts as opposed to relying on Defendant's dispatch system. (Doc. No. 72-3; Doc. No. 72-4; Doc. No. 72-5; Doc. No. 72-6).

Given these disputed facts regarding the factors of control and the opportunity for profit and loss, the Court cannot determine employee status at this time and the case must proceed to a jury trial.[3] Accordingly, the Court denies Defendant's motion for summary judgment on Plaintiffs' FLSA claim.

### B. FDUTPA Claim

Next, Defendant moves for summary judgment on the FDUTPA claim. In this claim, Plaintiffs allege that Defendant's misclassification of them as independent contractors resulted in substantial cost savings to Defendant (due to its not having to pay employment taxes) and gave Defendant an unfair competitive advantage as a taxicab company.

Defendant moves for summary judgment, making various arguments, including the argument that Plaintiffs have not suffered any actual damages. In support of this argument, Defendant cites to a report and recommendation in which a magistrate judge analyzed whether a FDUTPA claim (based on the alleged misclassification of an employee as an independent contractor) should be dismissed because the plaintiff had not suffered any actual damages. See

---

[3] Given the disputed nature of the control and opportunity for profit and loss factors, the Court need not address the additional four factors at this time.

Bishop v. VIP Transportation Group, LLC, 2016 WL 4435700, at *2 (M.D. Fla. Aug. 2, 2016). The magistrate judge made two recommendations on this issue. First, she recommended that the district court decline to exercise supplemental jurisdiction over the FDUTPA claim. See id. at *4. Alternatively, she recommended that the district court dismiss the FDUTPA claim based on the misclassification, because the self-employment taxes that the plaintiff was required to pay were not recoverable damages. See id. at *5. Upon review, the district court adopted the recommendation that it decline to exercise supplemental jurisdiction over the FDUTPA claim. See Bishop v. VIP Transportation Group, LLC, 2016 WL 4382694, at *1 (M.D. Fla. Aug. 17, 2016).

Upon review of the Bishop case, this Court is persuaded that it should decline to exercise supplemental jurisdiction over Plaintiffs' FDUTPA claim. This Court may decline to exercise supplemental jurisdiction over a claim if any of the following circumstances are present:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). If this Court determines that one of the enumerated reasons for declining supplemental jurisdiction is present, the Court should additionally consider equitable factors, such as judicial economy, convenience, and fairness to the parties in deciding whether to employ its discretion to decline supplemental jurisdiction. See Vasquez v. Joseph Cory Holdings, LLC, 2017 WL 819919, at *2 (M.D. Fla. Mar. 2, 2017).

In both Bishop and Vasquez, this Court considered whether it should decline to exercise

supplemental jurisdiction over the plaintiffs' FDUTPA claims when the plaintiffs were also asserting FLSA claims. In both cases, this Court determine that it should not exercise supplemental jurisdiction over the FDUTPA claims, because those claims would substantially predominate over the FLSA claims. See id.; Bishop, 2016 WL 4435700, at *3–4. The Court also found that equitable considerations did not counsel in favor of the exercise of jurisdiction. See Vasquez, 2017 WL 819919, at *4; Bishop, 2016 WL 4435700, at *4. This Court finds those cases to be persuasive.

As noted in both Bishop and Vasquez, the FLSA and FDUTPA claims will require different elements of proof. See Vasquez, 2017 WL 819919, at *3; Bishop, 2016 WL 4435700, at *3. Furthermore, whether an employment misclassification does in fact give rise to a FDUTPA claim under state law is a matter that should first be addressed by Florida courts. The only case brought to this Court's attention that has allowed such a claim to go forward is Seijo v. Casa Salsa, Inc., 2013 WL 6184969 (S.D. Fla. Nov. 25, 2013). However, in Seijo, the court refused to address the argument (raised in the defendant's reply brief) that the plaintiff did not suffer any actual damages from the FDUTPA violation. See id. at *7. As such, whether a plaintiff's payment of self-employment taxes that should have been paid by his or her employer is a cognizable form of actual damages under FDUTPA is an issue that should be addressed by Florida's state courts.[4] For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' FDUTPA claim, and the Court will dismiss it without prejudice.

---

[4] Given that the IRS provides a means for recouping the portion of employment taxes that Plaintiffs allegedly incorrectly paid as a result of their alleged misclassification, see Tran v. Tran, 2017 WL 894370, at *2 (M.D. Fla. Mar. 7, 2017), it is not clear to this Court that Plaintiffs suffered any actual damages that are cognizable under the FDUTPA due to Defendant's alleged misclassification.

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant's Motion For Summary Judgment (Doc. No. 72) is **DENIED**.

(2) The Court declines to exercise supplemental jurisdiction over Plaintiffs' FDUTPA claim, and the Court dismisses that claim without prejudice.

(3) The parties must file all pretrial motions, including all motions in limine, by **June 19, 2017.**  Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages. Responses thereto must be filed by **July 3, 2017** and may not exceed 20 pages.

(4) The parties' joint pretrial statement must be filed by **July 6, 2017.**

**DONE AND ORDERED** at Tampa, Florida, this 22nd day of May, 2017.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

9